**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JAMES TODERO, as Special Administrator of the ESTATE OF CHARLES TODERO, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Case No. 1:17-cv-1698 |
| | ) | |
| TOWN OF GREENWOOD, BRIAN BLACKWELL, RENEE ELLIOT, ELIZABETH LAUT, and AS-YET UNIDENTIFIED GREENWOOD POLICE OFFICERS, | ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| *Defendants.* | ) ) | |

## COMPLAINT

Plaintiff James Todero, as the Special Administrator for the Estate of

Charles Todero, by his attorneys Loevy & Loevy, complains of Defendants Town of

Greenwood, Brian Blackwell, Renee Elliott, Elizabeth Laut, and as-yet unidentified

Greenwood Police Officers and alleges as follows:

### Introduction

1.     On May 29, 2016, Charles "Charlie" Todero was tased 16 times by

Greenwood Police Officer Brian Blackwell. The attack killed Charlie.

2.     At the time, Charlie was unarmed, he was not acting violently, and he

had done nothing to provoke or justify Defendant Blackwell's brutal and deadly

assault.

3.     Quite to the contrary, Charlie was sitting on the side of a road reading

a Bible. The Bible was the only thing left to Charlie by his father, who had passed

away a week earlier. When he encountered Defendant Blackwell, Charlie had just been walking home from his father's funeral.

4.     Assisted by Defendants Elliot and Laut, Defendant Blackwell used his Taser against Charlie repeatedly, shooting electricity into Charlie's body for more than a minute and a half.

5.     Within minutes of this extreme electrocution and unjustified use of force, Charlie's heart stopped.

6.     Over the next thirteen days, Charlie suffered numerous heart attacks, devastating organ failure, and a litany of other complications, all caused by Defendant Blackwell's Taser attack.

7.     Charlie succumbed to his injuries and died on June 11, 2016.

8.     Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and Indiana law to hold Defendants accountable for their illegal actions and for violating Charlie's constitutional rights, and to redress the devastating injuries and loss caused to Charlie and his family by Defendant Blackwell's wholly unjustified tasing.

## Jurisdiction and Venue

9.     This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state law claims pursuant to 28 U.S.C. § 1367.

10.    Venue is proper pursuant to 28 U.S.C. § 1391(b). The events giving rise to Plaintiff's claims all occurred within this judicial district, Defendant Town of

Greenwood is a municipal corporation located within this judicial district and all or most of the parties reside in this judicial district.

## Parties

11.     Charlie Todero was a 30-year-old resident of Trafalgar, Indiana, and a beloved brother, son, and grandson.

12.     Plaintiff James Todero is Charlie Todero's brother and has been appointed as the Special Administrator of Mr. Todero's estate by the Superior Court of Johnson County, Indiana. Charlie Todero is survived by his mother, Teresa Todero, his grandmother, Barbara Taylor Crowe, and his brothers, James Todero, Aaron Crowe, Tyler Todero, Phillip Haugh, and Raymond Barrtett, among others.

13.     Defendants Brian Blackwell, Renee Elliot, Elizabeth Laut and As-Yet Unidentified Greenwood Police Officers (collectively "Defendant Officers") were at all times relevant to this complaint law enforcement officers employed by the Town of Greenwood, acting under color of state law and within the scope of their employment.

14.     Defendant Town of Greenwood is a municipal corporation under the laws of the State of Indiana. The Town of Greenwood is liable for all torts committed by the Defendant Officers while employed by the Town of Greenwood pursuant to the doctrine of *respondeat superior*. Defendant Town of Greenwood is additionally responsible for the official policies of the Greenwood Police Department.

**Factual Allegations**

15.     In May 2016, Charlie was living in Trafalgar, Indiana with his mother, Teresa Todero. He was working for a landscaping company, where he was respected for his hard work. He loved being outside and had a deep appreciation for nature.

16.     On May 22, 2016, Charlie's father suddenly passed away. Charlie was deeply affected by this unexpected loss and was deep in mourning.

**The Tasing of Charlie Todero**

17.     Shortly before noon on May 29, 2016, Charlie was walking along Madison Avenue in Greenwood, Indiana. He was returning home from his father's funeral and was carrying his father's Bible in his hands.

18.     When Defendant Blackwell arrived on scene, Charlie was sitting on the curb reading the Bible. Defendant Blackwell, who had interacted with Charlie many times in the past, knew him and engaged him in conversation.

19.     Charlie began to walk away from Defendant Blackwell, and Blackwell shot him with his Taser, lodging two metal probes in Charlie's back and shocking him with electricity.

20.     Charlie fell to his knees, and Defendant Blackwell tased him again by pulling the trigger on his Taser and holding it down while electricity coursed through the probes and into Charlie's body.

21.     Defendant Blackwell continued to tase Charlie repeatedly, each time for absolutely no reason.

22.    In the midst of Defendant Blackwell's series of Taser shots, Defendants Elliot and Laut arrived on scene.

23.    When they arrived, Charlie was on the ground and posed no threat to anyone whatsoever.

24.    Defendants Elliot and Laut assisted Defendant Blackwell as Blackwell continued to repeatedly shoot Charlie with his Taser.

25.    In addition to the Taser shots, Defendant Officers used violent physical force on Charlie while he was stunned and immobilized on the ground.

26.    At some point, Defendant Blackwell shifted to using his Taser in its drive stun mode, pushing the Taser directly into Charlie's thigh in order to amplify the Taser's effect.

27.    This created a circuit between the probes buried in Charlie's back and the Taser cartridge pressed into his leg, coursing electricity through his body between these points of contact.

28.    Defendant Blackwell continued to repeatedly shoot his Taser into Charlie's body while Defendants Elliot and Laut used violent physical force to assist him.

29.    Charlie was tased 16 times for a cumulative 98 seconds.

30.    In total, Defendant Officers tased Charlie repeatedly for a period of time lasting more than three minutes. During that time, there was never any justification for using any force against Charlie.

31.     Each of Defendant Blackwell's 16 Taser shots was entirely unjustified and unnecessary.

32.     During the entire incident, Charlie Todero was unarmed, he was non-violent, and he did not behave aggressively to any person, police officer or otherwise. Charlie had done nothing to justify the use of any force, much less the extreme and deadly force that Defendant Officers used.

33.     During the incident, some or all of Defendant Officers were wearing body cameras. But according to documents presently available to Plaintiff, neither Defendant Blackwell nor Defendant Laut preserved any body camera video of the incident. Defendant Elliott did turn on her body camera, but she did not do so until she had been at the scene several minutes, after all 16 Taser shots had been fired.

## The 16 Taser Shots Kill Charlie

34.     After Defendant Blackwell finished tasing Charlie 16 times, Charlie lay on the ground unresponsive.

35.     When paramedics arrived at the scene, they were unable to remove one of the Taser probes from Charlie's body because it was too deeply embedded in his back.

36.     Paramedics transported Charlie by ambulance to St. Francis Hospital.

37.     While Charlie was in the ambulance, his heart stopped for the first time.

38.     Though emergency medical personnel were able to restart his heart at the hospital, Charlie never recovered from the damage caused by the tasing.

6

39.    On June 11, 2016, two weeks after the incident, Charlie died as a result of the injuries that Defendant Officers had caused.

**The Medical Harm Charlie Suffered
Because of Defendants' Electrocution by Taser**

40.    The medical hallmarks of a death caused by extreme and grossly excessive electrocution by Taser are obvious in the record of Charlie's medical treatment following Defendant Officers' attack.

41.    Each time that Defendant Blackwell shot his Taser into Charlie Todero, the electric current caused Charlie's muscles to involuntarily contract for the duration of the Taser discharge.

42.    Muscle contractions release lactic acid into the body.

43.    Each of Defendant Blackwell's Taser shots caused additional and extended muscle contractions, releasing more and more lactic acid into Charlie's body.

44.    These repeated muscle contractions caused by electrocution lead to a condition called metabolic acidosis.

45.    Immediately after Charlie arrived at the hospital, he was diagnosed with metabolic acidosis.

46.    Charlie's blood acid was measured with a pH level of 6.78.

47.    This is dangerously acidic compared with the normal range of 7.35-7.45.

48.    Even slight deviations from the normal range can have serious and life threatening consequences.

7

49.     Muscle contractions caused by electrocution also result in the breakdown of muscle tissue, which releases myoglobin protein into the bloodstream. This condition is called rhabdomyolysis. The release of myoglobin into the blood stream causes serious kidney damage.

50.     Shortly after Charlie arrived at the hospital, he was diagnosed with rhabdomyolysis.

51.     In fact, the damage to Charlie's kidneys after the tasing was so serious he was diagnosed with acute kidney failure and placed on dialysis.

52.     Another effect of the rhabdomyolysis caused by the Taser discharge is hyperkalemia, or high blood potassium.

53.     Immediately after Charlie arrived at the hospital, he also was diagnosed with hyperkalemia.

54.     Charlie's blood potassium level was measured at 6.1 mmol/L.

55.     The normal range is 3.6-5.2 mmol/L.

56.     In addition to the above physiological harm, electrocution and high levels of lactic acid cause extreme physical pain, which releases adrenaline.

57.     The physiological conditions discussed above cause cardiac arrest and serious organ damage.

58.     As a direct result of Defendant Officers' tasing of Charlie, he suffered repeated cardiac arrests, metabolic acidosis, rhabdomyalosis, hyperkalemia, and organ failure.

59.     Defendants' 16 taser shots killed Charlie.

## Defendant Blackwell's History of Excessive Taser Usage

60.     Defendant Blackwell had a history of excessive Taser usage before the May 29, 2016 incident which killed Charlie Todero.

61.     In a previous incident, he shot his Taser at an elderly woman in her bathtub without any lawful justification for this use of force.

62.     The data log downloaded from Defendant Blackwell's Taser shows a pattern of multiple sustained Taser shots during short time periods.

63.     Instead of holding Defendant Blackwell accountable for his uses of excessive force, Defendant Town of Greenwood continued to employ and promote him.

64.     Defendant Town of Greenwood did not discipline Defendant Blackwell after his excessive force caused Charlie Todero's death.

65.     Instead, Defendant Officers and policymakers for the Town of Greenwood conspired to cover-up the true cause of Charlie's death, and released public statements falsely claiming that Charlie's death was unrelated to Defendant Blackwell's excessive Taser usage.

## Plaintiff's Damages

66.     As a result of Defendants' misconduct, Charlie died, and suffered devastating harm, injury and loss prior to his death. He was a young man with a loving family, and his whole life was wiped away. His family, too, has suffered extreme injury and loss because of Charlie's death.

67.     The Estate of Charlie Todero seeks to recover for the severe harms caused by the 16 Taser shots and the excessive force applied by Defendant Officers, including but not limited to damages for the loss of Charlie's life; the severe physical and emotional pain and suffering, mental anguish, loss of liberty, humiliation, degradation and anxiety that Charlie suffered from the moment of the first Taser shot through the time that he died 13 days later; the loss of society and companionship that his family has suffered; medical, hospital, funeral and burial expenses; lost earnings; and the costs and expenses of administering the estate, including attorney's fees.

## Count I – 42 U.S.C. § 1983
## Excessive Force

68.     Each Paragraph of this Complaint is incorporated herein.

69.     In the manner described above, the conduct of Defendant Officers constituted excessive force, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

70.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Charlie Todero's rights.

71.     The misconduct described in this Count was undertaken with malice, willfulness, and with reckless indifference to the rights of others.

72.     As a result of these Defendants' actions and omissions, Charlie, his estate, and his family suffered and will continue to suffer damages, including money

damages, expenses, loss of contribution, pain and suffering, wrongful death, severe emotional distress, loss of consortium, and loss of love and companionship.

73.     In addition, at all times relevant to the events described in this Complaint, and for a period of time prior thereto, the Town of Greenwood failed to promulgate proper or adequate, rules, regulations, policies, and procedures regarding the use of force, including the use of deadly force, against citizens and the use of Tasers.

74.     In addition, the Town of Greenwood failed to promulgate proper and adequate rules, regulations, policies, and procedures for the training, supervision, and discipline of Greenwood Police Officers with respect to the use of force, including the use of deadly force, against citizens and the use of Tasers.

75.     These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by policymaking officials for the Town of Greenwood and the Greenwood Police Department.

76.     These failures to promulgate proper or adequate rules, regulations, policies, and procedures caused routine violations of the constitutional rights of citizens interacting with Greenwood Police Officers.

77.     In addition, at all times relevant to the events described in this Complaint, and for a period of time prior thereto, the Town of Greenwood had notice of widespread practices and customs of Greenwood Police Officers, including but not limited to Defendant Blackwell, under which excessive force was used, including deadly force, against citizens, and Tasers were improperly used against citizens.

These widespread practices and customs caused the violation of Charlie Todero's constitutional rights.

78.     The violations of Charlie Todero's constitutional rights were also caused by the Town of Greenwood's failure to adequately train, supervise, and discipline its officers. At all relevant times and for a period of time prior thereto: (a) Greenwood Police Officers, including Defendant Blackwell, were allowed to use force, including deadly force, against citizens, and to use Tasers improperly against citizens; (b) Greenwood Police Officers, including Defendant Blackwell, did not receive proper training in the use of force, including deadly force, against citizens, and the use of Tasers; (c) supervisors in the Greenwood Police Department with knowledge of what constituted permissible use of force, permissible use of deadly force, and permissible use of Tasers did not properly supervise or discipline Greenwood Police Department; and (d) employees of the Greenwood Police Department formally and informally adhered to a code of silence whereby Greenwood Police Officers and their supervisors agreed explicitly and implicitly not to report misconduct committed by other officers, including the misconduct described in this Complaint, creating an environment of lawlessness, without discipline, where employees of the Greenwood Police Department engaged in misconduct without fear of reprisal.

79.     All of the above widespread practices and customs, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the Town of Greenwood and the Greenwood Police Department

directly encouraged, allowed, acquiesced in, and/or turned a blind eye to the very type of misconduct discussed above, by failing to adequately train, supervise, and control Greenwood Police Officers, by failing to promulgate policies, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses, such as those that affected Charlie Todero.

80.     The above-described widespread practices, so well-settled as to constitute *de facto* policy within the Greenwood Police Department, were able to exist and thrive because policymakers, acting under color of law with authority over the same, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

81.     In addition and/or alternatively, the misconduct described in this Count was undertaken pursuant to the policies and practices of the Town of Greenwood in that the constitutional violations committed against Charlie Todero were committed with the knowledge or approval of persons with final policymaking authority for the Town of Greenwood, or were actually committed by persons with such final policymaking authority.

82.     Charlie Todero's, his estate's, and his family's injuries were caused by employees of the Town of Greenwood, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the misconduct described in this Complaint.

### Count II – 42 U.S.C. § 1983
### Failure to Intervene

83.     Each Paragraph of this Complaint is incorporated herein.

84.     In the manner described above, each of Defendant Officers had a reasonable opportunity to prevent the violation of Mr. Todero's constitutional rights as set forth above, but failed to do so.

85.     These Defendants' actions were undertaken intentionally, with malice, and with reckless indifference to Charlie Todero's rights.

86.     As a result of these Defendants' actions and omissions, Charlie, his estate, and his family suffered and will continue to suffer damages, including money damages, expenses, loss of contribution, pain and suffering, wrongful death, severe emotional distress, loss of consortium, and loss of love and companionship.

87.     The Defendant Officers' misconduct described in this Count was undertaken pursuant to the official policies of Defendant Town of Greenwood and the Greenwood Police Department, in the manner more fully described above.

## Count III – 42 U.S.C. § 1983
## Conspiracy to Deprive of Constitutional Rights

88.     Each Paragraph of this Complaint is incorporated herein.

89.     In the manner described above, there was an agreement between two or more of the Defendant Officers, as well as between Defendant Officers and others currently unknown to Plaintiff, to deprive Charlie Todero of his constitutional rights.

90.     Specifically, Defendant Officers conspired to use excessive force against Charlie Todero. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

91.     These Defendants' actions were undertaken intentionally, with malice, and with reckless indifference to Charlie Todero's rights.

92.     As a result of these Defendants' actions and omissions, Charlie, his estate, and his family suffered and will continue to suffer damages, including money damages, expenses, loss of contribution, pain and suffering, wrongful death, severe emotional distress, loss of consortium, and loss of love and companionship.

93.     The Defendant Officers' misconduct described in this Count was undertaken pursuant to the official policies of Defendant Town of Greenwood and the Greenwood Police Department, in the manner more fully described above.

**Count IV -- State Law Claim**
**Assault and Battery**

94.     Each Paragraph of this Complaint is incorporated herein.

95.     In the manner described above, Defendant Officers intended to place Charlie Todero in reasonable fear of imminent harm at a time when they had the ability to inflict harm, and their conduct constituted unwelcome, unjustified, and offensive physical contact, undertaken willfully and wantonly, causing Mr. Todero's bodily injuries.

96.     As a result of these Defendants' actions and omissions, Charlie, his estate, and his family suffered and will continue to suffer damages, including money damages, expenses, loss of contribution, pain and suffering, wrongful death, severe emotional distress, loss of consortium, and loss of love and companionship.

## Count V – State Law Claim
## Wrongful Death

97.    Each Paragraph of this Complaint is incorporated herein.

98.    In the manner described above, the actions of Defendant Officers constituted offensive physical contact made without the consent of Charlie Todero.

99.    These Defendants' actions and omissions were undertaken willfully and wantonly and either intentionally or with reckless indifference or conscious disregard for the safety of others.

100.    These Defendants' actions were the proximate cause of Charlie Todero's death and the injuries to Charlie, his estate, and his family.

101.    As a result of these Defendants' actions and omissions, Charlie, his estate, and his family suffered and will continue to suffer damages, including money damages, expenses, loss of contribution, pain and suffering, wrongful death, severe emotional distress, loss of consortium, and loss of love and companionship.

## Count VI – State Law Claim
## Survival Action

102.    Each Paragraph of this Complaint is incorporated herein.

103.    In the manner described above, the actions of Defendant Officers constituted offensive physical contact made without the consent of the Decedent.

104.    These Defendants' actions and omissions were undertaken willfully and wantonly and either intentionally or with reckless indifference or conscious disregard for the safety of others.

105.    These Defendants' actions were the proximate cause of Charlie Todero's great bodily harm and death, as well as Mr. Todero's great pain and suffering.

106.    The misconduct described in this Count was undertaken with intentional disregard for Charlie Todero's rights.

107.    As a result of these actions and omissions, Charlie Todero experienced injuries including conscious physical and emotional pain and suffering.

**Count VII – State Law Claim**
**Intentional Infliction of Emotional Distress**

108.    Each Paragraph of this Complaint is incorporated herein.

109.    In the manner described above, the actions, omissions, and conduct of the Defendant Officers as set forth above were extreme and outrageous. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Todero and to Plaintiff as is more fully alleged above.

110.    As a result of these Defendants' actions and omissions, Charlie, his estate, and his family suffered and will continue to suffer damages, including money damages, expenses, loss of contribution, pain and suffering, wrongful death, severe emotional distress, loss of consortium, and loss of love and companionship.

**Count VIII – State Law Claim**
***Respondeat Superior***

111.    Each Paragraph of this Complaint is incorporated herein.

17

112.    In committing the acts and omissions alleged in the preceding paragraphs, Defendant Officers were agents of Defendant Town of Greenwood acting at all relevant times within the scope of their employment.

113.    Defendant Town of Greenwood is liable as principal for the state law torts committed by its agents.

### Count IX -- State Law Claim
### Indemnification

114.    Each Paragraph of this Complaint is incorporated herein.

115.    Indiana law requires public entities to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

116.    In committing the acts alleged in the preceding paragraphs, Defendant Officers were employees of the Town of Greenwood acting at all relevant times within the scope of their employment.

WHEREFORE, Plaintiff James Todero respectfully requests that this Court enter judgment in his favor and against Defendants, awarding compensatory damages, punitive damages, attorney's fees and costs, and any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiff James Todero hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

**James Todero,**
**as Special Administrator of the**
**Estate of Charles Todero**

BY:   /s/ Sam Heppell
      *One of Plaintiff's Attorneys*


Arthur Loevy
Jon Loevy
Steve Art
Sam Heppell
LOEVY & LOEVY
311 North Aberdeen St., Third Floor
Chicago, IL 60607
(312) 243-5900