**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| TERESA TODERO, as Special Administrator of the ESTATE OF CHARLES TODERO, <br><br> *Plaintiff*, <br><br> v. <br><br> CITY OF GREENWOOD, BRIAN BLACKWELL, RENEE ELLIOTT, ELIZABETH LAUT, and AS-YET UNIDENTIFIED GREENWOOD POLICE OFFICERS, <br><br> *Defendants*. | ) <br> ) <br> )   Case No. 1:17-cv-1698-TWP-MJD <br> ) <br> )   Judge Tanya Walton Pratt <br> ) <br> )   Magistrate Judge Mark J. Dinsmore <br> ) <br> ) <br> )   JURY TRIAL DEMANDED <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S MOTION TO COMPEL
PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

Plaintiff TERESA TODERO, as Special Administrator of the ESTATE OF CHARLES TODERO, by her attorneys Loevy & Loevy, respectfully moves to compel the production of electronically stored information from Defendants City of Greenwood, Brian Blackwell, Renee Elliott, and Elizabeth Laut. In support, Plaintiff states as follows:

**INTRODUCTION**

For months Plaintiff has asked Defendants repeatedly to produce electronically stored information (ESI) in their possession, custody, and control. At various points, as described below, Plaintiff understood the parties to have reached an agreement about the production of ESI, and Plaintiff has at this point produced nearly 1,000 pages of ESI to Defendants. But Defendants have not reciprocated, and they have not articulated any justification for their refusal to produce the ESI. There is simply no good reason that the ESI has not been produced already.

Moreover, the minimal amount of ESI that Defendants have produced demonstrates without doubt the importance of this discovery. As discussed in more detail below, instant messages and emails reveal that Defendants and their employees mocked Charlie over instant messages shortly after he was tased, and later communicated with the Coroner about amending an autopsy report that revealed that Charlie had suffered skull fractures. The ESI that Plaintiff seeks is central to the issues in dispute in this case.

Defendants' obstruction of ESI discovery has substantially hindered other discovery in the case, including depositions of Defendant Blackwell and critical third parties. Plaintiff respectfully requests that the Court compel Defendants to produce all ESI in their control that is responsive to Plaintiff's search terms.

## BACKGROUND

As the Court is aware, this case involves the tasing of Charlie Todero. A more fulsome description of Charlie's tasing and death is contained in Plaintiff's motion to compel non-ESI discovery, which was filed last Thursday. Dkt. 59 at 2-3. At the time of the incident, during the days that Charlie lay dying in the hospital, and in the time since, Defendants Blackwell, Laut, Elliott, and other employees of the Greenwood Police Department have created a multitude of electronic records relating to the case. Among other things, they have sent emails, text messages, and instant messages from their patrol cars, and they have communicated on social media. Moreover, there are electronic records—including dispatch logs, draft police reports, and documents from their internal investigation—that are controlled by Defendant Greenwood.

Discovery has been open for six months, and despite repeated requests, Plaintiff still has not received any ESI production from Defendant Blackwell, she has received extremely limited ESI discovery from the Greenwood Defendants (the other individual Defendants and the City of

2

Greenwood), and she learned only recently that the Greenwood Defendants have not even searched their ESI for the search terms that Plaintiff provided on December 30, 2018. This section explains Plaintiff's efforts to obtain ESI discovery.

At the start of the case, the parties negotiated a case management plan that included a non-exhaustive list of categories of ESI that would need to be produced. The Court entered the case management plan on August 28, 2017, which stated that ESI in the possession of the Greenwood Police Department (GPD), business and personal email, hospital records, and social media content, among other things, were discoverable. Dkt. 32 at 5-6. On September 12, Plaintiff served discovery requests on Defendants, at least 10 of which call for the production of ESI. Ex. 1 (Plaintiff's First Set of Requests for Production) Nos. 1-3, 11-15, 17-18.

On December 7, the Greenwood Defendants produced 73 pages of "emails pertaining to Charles Todero generated by the City of Greenwood prior to the date the city was served with a tort claim notice." Ex. 2 (Letter from M. Holloway, Dec. 7, 2017). Defendants asserted that all emails after that date were privileged.[1] Review of these emails reveals that Defendants searched only the term "Todero." It is not clear what accounts were searched.

On December 21, 2017, the parties held a discovery conference on ESI, and they agreed to identify categories of ESI, custodians, and search terms. Plaintiff confirmed the discussion in a letter, noting: (1) that Defendant Blackwell's counsel had agreed to search Blackwell's personal and work email accounts, the text messages on his cell phone, and his social media accounts; (2)

---

[1] Plaintiff contested this blanket assertion of privilege, requesting that Defendants identify the legal basis for withholding *all* ESI produced after a particular date, whether or not that ESI constituted attorney-client communications or work product. In addition, Plaintiff asked Defendants to provide Plaintiff with a privilege log of all ESI being withheld. Ex. 3 (Letter from S. Art, Dec. 15, 2017). Defendants did not provide a privilege log until January 26, 2018. It appears from the privilege log and Defendants' later production of ESI created after the date of the tort claim notice that Defendants' have abandoned their blanket assertion of privilege. To the extent that there are remaining privilege issues entwined with Defendants' ESI production, Plaintiff will raise them after the production is complete.

and that Plaintiff was asking Defendants to perform searches of all of their clients' ESI for the

following search terms:

| | | |
|---|---|---|
| • Todero | • MacNaughton | Sergeant (limited to 60 days after incident) |
| • Charles | • Walters | |
| • Charlie | • Godfrey | • Tase* |
| • Geller | • Pitts | • Tasing |
| • Hartman | • Venne | • Shot* |
| • Malczewski | • Mitchell | • Shoot* |
| • Roller | • Howard | • Disciplin*, suspen*, leav* |
| • Cummings | • Clay | • Suicid* |
| • Cunningham | • Terrell | • Kill* |
| • Reliford | • Bukovich | • Die*, dead* |
| • Kalina | • Crowe | • "Madison Ave*" |
| • Moore | • Elliott, Laut, Ison, Fillenwarth, Eck, Holtzlieter, Moyer, Chief, "Assistant Chief," | |
| • McQueen | | |
| • Poynter | | |

Ex. 4 (Letter from S. Heppell, Dec. 30, 2017) at 2-5.

Because the ESI in Defendants' possession is important to depositions of Greenwood

Police Department employees and other witnesses, depositions were then delayed. For instance,

after Plaintiff sent her search terms, the parties agreed to delay the deposition of Defendant

Blackwell pending production of ESI. Ex. 5 (Emails between counsel, Dec. 22, 2017).

On January 5, 2018, the parties submitted letters to the Court outlining their disputes.

Defendant Blackwell represented to the Court that he was "in the process of searching the

copious search terms provided by plaintiff's counsel" and that it was expected to take some time.

Ex. 6 (Letter from C. Pollack, Jan. 5, 2018). On the same day, the Greenwood Defendants sent a

letter to Plaintiff, copied to the Court, in which they objected to searching GPD emails for the

proposed terms because such searches "would capture hundreds of emails not relevant to the

case." Ex. 7 (Letter from M. Holloway, Jan. 5, 2018). The letter did not indicate whether the

Greenwood Defendants had actually searched to determine whether that was the case.

On January 8, 2018, the Court held a telephonic discovery conference. Just before that

conference, the Greenwood Defendants produced additional emails responsive only to the search

term "Todero," this time from after the date of the tort claims notice. Included in these emails

was highly relevant correspondence relating to fractures in Charlie Todero's skull, which are

discussed in further detail below. The Greenwood Defendants stated that they continued to

review additional emails, without specifying whether those emails they were reviewing were hits

to the same or some other search term(s). Ex. 8 (Email from M. Holloway, Jan. 8, 2018). The

parties did not resolve their discovery dispute during their conference with the Court, so the

Court set an in-person conference for January 17, 2018. Dkt. 50.

On January 9, 2018, Defendants sent an email to Plaintiff's counsel with their own list of

search terms. Ex. 9 (Email from C. Pollack, Jan. 9, 2018). The list of terms was just as long as

Plaintiff's list of terms outlined above, and it contained many of the same terms. *See id.*

Less than a week later, Plaintiff wrote to the Defendants to inform them that Plaintiff was

searching all terms provided by Defendants. Ex. 10 (Email from S. Art, Jan. 15, 2018). Plaintiff

stated "[b]y agreeing to search for these terms, we understand that the parties are mutually

agreeing to search the terms set out in their respective correspondence on ESI[.]" *Id.*[2] Plaintiff

received no response to these emails.

On January 17, 2018, the Court held the in-person discovery conference. At the

conference, the Greenwood Defendants produced 19 additional pages of emails responsive to the

search term "Todero," and two days later produced some of the instant messages sent by the

individual Defendants on the day of the incident. The parties discussed ESI again during the

Court's conference.

---

[2] In separate emails sent the same day, Plaintiff asked the Greenwood Defendants to outline their position on searching and producing ESI, Ex. 11 (Email from S. Art, Jan. 15, 2018), and she asked Defendants to ensure that they were producing all categories of ESI, including information from the Greenwood Police Department's centralized computer system (the Spillman system), text and instant messages sent between the officers, computer dispatch logs, etc. Ex. 12 (Email from S. Art, Jan. 15, 2018).

On January 18, 2018, Plaintiff wrote an email memorializing the ESI discussion, confirming that Defendant Blackwell had represented that his ESI had already been searched for Plaintiff's search terms, that the time frame for the search was date of the incident to the present, and that the parties had agreed to mutually search all of one another's search terms. Ex. 13 (Email from S. Heppell, Jan. 18, 2018).

Counsel for Defendant Blackwell responded, saying, "Yes, we can agree that ESI will encompass from 5/29/16 to present. This will require us to hold all communications to/from our office and draft a privilege log. We will need more time. We are still working on getting the text messages from his cell phone and Mark [Holloway] is handling issues relating to his work computer/cell phone (if any) since those are the City's property. Mark will get that data to us so we can perform the search." Ex. 14 (Email from C. Pollack, Jan. 19, 2018). At that point, Plaintiff understandably thought that the parties had reached an agreement regarding ESI.

The next day, counsel for the Greenwood Defendants announced for the first time that those Defendants refused to search Plaintiff's search terms. The Greenwood Defendants announced that they would instead search only the words "autopsy, Charlie, Todero, tase*, taz [*sic*], taze [*sic*], and tazer [*sic*]." Ex. 15 (Email from M. Holloway, Jan. 19, 2018). In response, Plaintiff noted that Defendants had not mentioned in the three weeks since search terms had been provided, including at the conference with the Court, that they were in fact not searching those terms, and Plaintiff asked Defendants the basis of their refusal to engage in ESI discovery. Ex. 16 (Email from S. Heppell, Jan. 22, 2018). Defendants did not provide the basis of their objection in response, but instead simply restated that they were not searching the terms provided by Plaintiff. Ex. 17 (Email from M. Holloway, Jan. 23, 2018).

On January 26, 2018, the Greenwood Defendants produced another batch of emails responsive to the search term "Todero," the vast majority of which had already been produced. Counsel for the Greenwood Defendants stated in an email, "We are working on the other discovery discussed, additional Instant Messaging, *ESI for expanded search*, other items discussed in your January 22nd email, and items discussed in the discovery conference with Judge Dinsmore on January 17th." Ex. 18 (Email from M. Holloway, Jan. 26, 2018) (emphasis added). Because Defendant Blackwell had promised to produce responsive ESI, and because the Greenwood Defendants had represented that they were conducting an expanded search, Plaintiff waited for Defendants' ESI production. It never came.

On February 20, 2018, the Court held a discovery conference. The Greenwood Defendants represented to the Court that they still had not even searched Plaintiff's proposed search terms. The Court authorized Plaintiff to file this motion to compel the production of ESI.

On February 22, 2018, Plaintiff received from the Greenwood Defendants what they claimed were "all emails sent to or from [Defendants Laut, Blackwell, Elliot, and GPD employees Fillenwarth, Chief Laut, and Deputy Chief Ison] for 60 days after the event, and searches for the words autopsy, Charlie, tase*, taz, taze, and tazer, one year after the event." There were only 136 pages of emails produced. Those emails do not appear to include what Defendants represent that they include. For example, Plaintiff cannot locate emails to or from any of the individual Defendants. Defendants have not provided a formal discovery response outlining what exactly they have produced and whether it is everything in those categories.

As things stand, Defendant Blackwell still has not produced any ESI, despite repeated assurances that he was searching all of his ESI—including work and personal email—for Plaintiff's search terms. In addition, the Greenwood Defendants have not searched Plaintiff's

search terms; they have not identified all categories of ESI that they possess; and they have not identified custodians whose ESI is being searched. In short, Defendants have essentially refused to participate in ESI discovery.

In the meantime, Plaintiff has searched Defendants' entire list of search terms, from the agreed date of the incident forward, across Plaintiff's email and Facebook accounts. This search and review admittedly took a substantial amount of time. But at this point, Plaintiff has completed that production and has produced nearly 1,000 pages of ESI. Plaintiff engaged in this discovery with the understanding that Defendants were doing the same.

### DISCUSSION

Federal discovery rules are liberal in their scope to assist in preparation for trial and to aid in the search for the truth. *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). Rule 26 provides that parties may obtain discovery or any non-privileged matter relevant to the claims or defenses in the case. Fed. R. Civ. P. 26. "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence, and relevancy is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Exec. Mgmt. Servs., Inc. v. Fifth Third Bank*, No. 1:13-CV-00582-WTL, 2014 WL 5529895, at *3 (S.D. Ind. Nov. 3, 2014) (quoting *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)). Rule 37(a) authorizes motions to compel, and "[i]n ruling on such motions, courts have 'broad discretion' and have 'consistently adopted a liberal interpretation of the discovery rules' in order to 'aid the search for truth.'" *Id.* (quoting *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006)).

This Court should compel Defendants to search Plaintiff's proposed terms across all categories of ESI in their possession, custody, or control, and to produce responsive documents. This sort of discovery is routine in federal litigation and rarely requires a motion to compel. In this case, the evidence that Plaintiff seeks is centrally relevant to the case, as is amply evidenced by Defendants' ESI produced so far. Moreover, the search terms that Plaintiff has provided are narrowly confined, and production of this important evidence will not be unduly burdensome. To the extent that Defendants contend that they face an undue burden, they make that contention without even having searched Plaintiff's terms. Accordingly, Defendants objections (to the extent they have articulated any) are based on pure supposition, those objections should be overruled, and the evidence should be produced.

## I.     Production of ESI Is Routine and Defendants' Obstruction Is Unwarranted

The production of electronically stored information of the type that Plaintiff seeks here is routine in federal litigation. The Federal Rules, Local Rules, and this Court's standard case management plans contemplate that ESI on relevant topics shall be produced, that parties will identify sources of ESI, discuss problems accessing ESI, if any, establish search protocols, and confer about the costs of producing ESI, if it will be costly. *See*, *e.g.*, FED. R. CIV. P. 26; U.S. District Court for the Southern District of Indiana, ESI Supplement, *available at* http://www. insd.uscourts.gov/sites/insd/files/Uniform%20CMP%20-%20ESI%20Supplement.pdf. Indeed, the case management plan in this case provides for the production of categories of ESI that were deemed relevant by the parties at the beginning of the case. Dkt. 32 at 5-6; *see also Delphi Auto. Sys. LLC v. Shinwa Int'l Holdings Ltd.*, No. 1:07-CV-0811-SEB-JMS, 2009 WL 10687811, at *3 (S.D. Ind. Apr. 28, 2009) ("So long as the ESI Agreement remains in effect, it defines the parties' obligations with respect to electronic discovery.").

Instead of complying with this routine process, Defendants have strung Plaintiff along, ultimately refusing to produce ESI at all (Defendant Blackwell) or objecting to searching Plaintiff's terms and then producing ESI responsive to the term "Todero" (the Greenwood Defendants). Defendants have done this despite the fact that they have discussed ESI production with Plaintiff extensively, received Plaintiff's search terms two months ago, and represented to Plaintiff and the Court (in the case of Defendant Blackwell) that Plaintiff's terms were being searched. Most importantly, Defendants have engaged in this obstruction despite sending Plaintiff a list of search terms, which Plaintiff faithfully searched and in response provided hundreds of pages of documents. It should not be so difficult, and it should not take the months of correspondence described above, to conduct routine ESI discovery.

Defendants' discovery has not only deprived Plaintiff of centrally relevant information responsive to Plaintiff's earliest discovery requests, but it has delayed other discovery in the case. For example, Plaintiff has not been able to take the depositions of Defendant Blackwell, other Greenwood Police Department employees, and other third parties without the ESI in Defendants' possession. Defendants should be compelled to produce this discovery on a tight timeline so that discovery can proceed in a timely fashion.

## II.     The ESI Plaintiff Seeks Is Plainly Relevant

Discovery that seeks production of ESI, like any other discovery, is permissible and compliance should be compelled where the ESI is relevant to a claim or defense in the case. FED. R. CIV. P. 26; *Kleen Prod. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *17 (N.D. Ill. Sept. 28, 2012) ("[D]efendants must produce electronically stored information that is relevant, not privileged, and reasonably accessible, subject to the discovery limitations in Rule 26(b)(2)(C).") (internal quotations omitted). Plaintiff seeks production of email, text

messages, instant messages, dispatch logs, computer records, draft police reports, and other ESI in Defendants' control, and she has provided a list of search terms that are narrowly confined to the issues in this case. The search terms set out above relate to the name of the victim, witnesses and officers at the scene of the tasing and the investigation thereafter, aspects of the incident, the use of tasers, and officer discipline. These are terms that relate to central issues in the case, from the moment the tasing began, to Defendants' investigation of the incident, to Charlie's death, and Defendants' discussion of the incident to the present day. There is nothing far afield about any of the search terms that Plaintiff has proposed. They are all likely to yield ESI relevant to the case. Indeed, when the parties agreed to provide each other search terms, Defendants provided a list of search terms quite similar to Plaintiff's list, Plaintiff searched her ESI for those terms, the searches yielded relevant and discoverable information, and Plaintiff then produced those responsive documents.

Moreover, if the limited ESI Defendants have produced thus far is any indicator, there is no question that Defendants' refusal to produce ESI has obscured evidence critical to the case. For example, Defendants produced ESI showing that the Marion County Coroner initially issued an autopsy report for Charlie Todero which reported that Charlie had "fractures of the basilar skull." Ex. 19 (Email from J. Ison, Aug. 1, 2016, 5:20 p.m.); *see also* Ex. 20 (First Autopsy Report Sent to Defendants). Greenwood Deputy Chief James Ison, who was in charge of investigating Todero's death, wrote an email to the Corner's Office asking about that finding. *Id.* The Chief Deputy Coroner responded that she "still had questions about the case," said that there "could be some other reason for the fractures that are consistent with non trauma events," and stressed that this information should not be released publicly. *Id.* (Email from A. Ballew, Aug. 2, 2016, 10:15 a.m.). A week later, Ison followed up. Ex. 21 (Email from J. Ison, Aug. 12, 2016).

No response to his follow-up email has been produced. A full three months later, with no disclosed intervening communication, an employee of the Coroner's officer suddenly wrote to Ison, saying that there had been "errors in the [autopsy] report." Ex. 22 (Email from C. England, Nov. 3, 2016). A new autopsy report was provided with the word "no" inserted before "fractures of the basilar skull." *See* Ex. 23 (Second Autopsy Report Sent to Defendants). In a case where cause of death is in dispute, communications between Defendants' employees and the Coroner about key findings at autopsy that were mysteriously amended are important evidence.

Or consider the instant messages sent between Defendant Blackwell and other Greenwood Police Officers about the incident. Just minutes after Defendant Blackwell shot Charlie in the back and Tased him for a full minute and a half, and around the time that Charlie's heart stopped for the first time, Defendant Blackwell sent a message to 10 other Greenwood Police Officers mocking Charlie. "OH MY BACK!! MY BACK!!" Blackwell wrote. Ex. 24 (Blackwell Instant Message, May 29, 2016, 12:11 p.m.). There are other examples of Defendants' utter disregard for Charlie in these messages. For instance, later in the day Blackwell explains to a fellow officer, "I had to tase a guy a dozen times today for trying to commit suicide by walking into traffic and he ended up coding when he arrived at the hospital . . . so the chief wants a thorough report." Ex. 24 (Blackwell Instant Message, May 29, 2016, 4:44 p.m.). The response was "lol nice." *Id.* (Instant Message, May 29, 2016, 4:45 p.m.).

The jury surely will be entitled to hear these statements of the Defendants in their consideration of the case. In addition to showing Defendants' state of mind close in time to the shooting, these statements also narrate important factual disputes from Defendants' point of view: (1) though Defendants would later contend that the tasing and Charlie's heart attack were not related, here Defendant Blackwell draws and undeniable connection between the two; and (2)

to the extent there is any dispute about whether Defendant Blackwell shot Charlie in the back, that question is answered by his own statement mocking Charlie right after the tasing concluded. A full search and production of ESI is necessary to ensure that relevant evidence is produced.

## III.   Defendants Have Not Raised Any Legitimate Objection to Production of the ESI

As this Court has explained: "The party resisting a motion to compel bears the burden to show why a particular discovery request is improper." *Executive Mgmt.*, 2014 WL 5529895, at *3 (citing *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009)). The objecting party must show with specificity that a request is improper, and general assertions of hardship are insufficient. *Id.*

Defendants have not and could not raise any legitimate objection that would justify withholding the ESI that Plaintiff seeks. First, Defendant Blackwell had already agreed to produce this ESI before apparently changing course in the last two weeks. Second, the Court should hold that Defendants' months-long delay in even searching for ESI waives any and all objections that they might have. *See*, *e.g.*, *Lock Realty Corp. v. U.S. Health L.P.*, 3:06-CV-487RLM, 2008 WL 4372411, at *2 (N.D. Ind. Sep. 22, 2008) (90-day delay waives objections). Third, Defendants cannot reasonably object to complying with the ESI discovery when they themselves served ESI searched terms and in response received ESI produced by Plaintiff without objection. Fourth, as discussed already, the ESI search terms are narrowly tailored to the facts at issue in this case—they are not overly broad or unmanageable in any sense. Fifth, any contention by Defendants that the discovery is overly broad or unduly burdensome is belied by the fact that Defendants have admitted to the Court that they have not even searched Plaintiff's search terms at this point in the litigation. Finally, Defendants' rote and vague objection to the

burden of responding to this discovery is insufficient to sustain Defendants' burden of showing with particularity why producing ESI would impose an undue burden.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court compel all Defendants to produce all ESI in their control that is responsive to Plaintiff's search terms. That production should be compelled across all categories of ESI and all custodians who may have responsive ESI. At this point, the failure to produce ESI has substantially delayed depositions in this case, including the deposition of Defendant Blackwell. Accordingly, Plaintiff additionally request that the Court order Defendants to complete their ESI productions within two weeks.

RESPECTFULLY SUBMITTED,

**Teresa Todero,
as Special Administrator of the
Estate of Charles Todero**

BY:   /s/ Steve Art
      *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Steve Art
Vince Field
Sam Heppell
LOEVY & LOEVY
311 North Aberdeen St., Third Floor
Chicago, IL 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

I, Steve Art, an attorney, hereby certify that on February 26, 2018, I caused the foregoing Motion to Compel Production of ESI to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Steve Art
*One of Plaintiff's Attorneys*

15