IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERESA TODERO, as Special Administrator of the ESTATE OF CHARLES TODERO, <br><br> *Plaintiff*, <br><br> v. <br><br> CITY OF GREENWOOD, BRIAN BLACKWELL, RENEE ELLIOT, ELIZABETH LAUT, and AS-YET UNIDENTIFIED GREENWOOD POLICE OFFICERS, <br><br> *Defendants*. | Case No. 1:17-cv-1698-TWP-MJD <br><br> Judge Tanya Walton Pratt <br><br> Magistrate Judge Mark J. Dinsmore <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION TO PERMIT MORE THAN 10 DEPOSITIONS PER SIDE**

Plaintiff TERESA TODERO, as Special Administrator of the ESTATE OF CHARLES TODERO, by her attorneys Loevy & Loevy, replies in support of her Motion to Permit More Than 10 Depositions Per Side (Dkt. 62), stating in support as follows:

**INTRODUCTION**

Plaintiff set out in her motion the particular witnesses she intends to depose in this case, explained why the testimony of those witnesses is centrally important to the disputes that the jury will decide, and provided a number of reasons that it would be unfair to deny Plaintiff additional depositions. Among other things, Defendants have disclosed a large number of witnesses that they intend to call at trial, and many of those witnesses were both involved in the Todero tasing and are also within Defendants' exclusive control, meaning that the Defendants have unilateral access to what these witnesses know and what they might say at trial. In addition, given the number of witnesses to the events at issue, additional depositions are necessary to ensure that

both sides have the opportunity to discover what witnesses in the case know and so that the case can be tried on the merits.

Defendants do not respond to Plaintiff's argument that it is unfair to let them disclose dozens of witnesses who they control without giving Plaintiff the opportunity to conduct discovery into what those witnesses know. Instead, Defendants argue that Plaintiff's motion is premature, that Plaintiff has not sufficiently identified the witnesses she intends to depose or what knowledge those witnesses have to offer, and that conducting the depositions Plaintiff proposes would be unduly burdensome given the nature of the case. None of these arguments has merit. For the reasons set forth in Plaintiff's initial motion and below, Defendants' arguments should be rejected and this Court should permit additional depositions.

## ADDITIONAL BACKGROUND

Defendants do not respond to most of the background information provided by Plaintiff about her attempts to schedule depositions; Defendants' refusal to provide additional dates for third-party witnesses; or Defendants' decision to wait until six months into discovery—long after the parties' scheduling conference and the conversations about depositions began—to make it known that they intended to enforce a 10-deposition limit. Instead, Defendants call Plaintiff's recitation of the facts a distraction, and they state that they have cooperated fully in discovery. Response, Dkt. 70, at 2-3. Plaintiff stands by the background facts set out in her motion, Motion, Dkt. 62, at 3-5, with the following additional observations.

Plaintiff explained in her motion that Defendants only agreed to provide six days in March and three days in April 2018 for third-party depositions, despite that discovery has been open for months. *Id.* at 3-4. The nine dates identified by Defendants still have not arrived, and there are only weeks left in discovery. *Id.* Defendants now claim that Plaintiff has misinterpreted

and that the nine dates they provided back in December 2017 were simply those on which Defendants intended to schedule their own depositions. But in her motion, Plaintiff provides examples of the numerous requests she made for additional deposition dates; none of which received a response from Defendants, *id.*; and Defendants in their response do not point to anything in the record that contradicts Plaintiff's version of events. *See* Dkt. 70 at 2-3. Indeed, Exhibit 1 to Defendants' response actually confirms that they provided only nine dates for depositions. Response, Ex. 1, Dkt. 70-1.

Defendants also argue that they asked Plaintiff to identify the witnesses that she intended to depose, that Plaintiff declined to do so, and that this was the reason for delay. Dkt. 70 at 3. This, too, is incorrect. In fact, Defendants attach as a different exhibit to their response Plaintiff's January 5 correspondence, in which Plaintiff identified witnesses she intended to depose and requested deposition dates. Response, Ex. 3, Dkt. 70-3. Defendants also never responded to that correspondence. *See* Dkt. 62 at 4. Moreover, to date Defendants still have not provided additional dates for depositions. Instead, they have objected to Plaintiff's effort to notice depositions as unauthorized.[1]

Plaintiff did not include the background discussion in her motion to distract from the issue at hand. On the contrary, Plaintiff provided it to explain the reasons that she has now noticed depositions without input on deposition dates from the defendants. In addition, Plaintiff wished to inform the Court that she has been diligent in seeking deposition dates, and that she views the Defendants' refusal to provide dates and to participate in third-party depositions as obstructing the prompt completion of discovery and the litigation of this matter on the merits.

---

[1] Separately, Defendants' response makes reference to the difficulty scheduling the parties' depositions given other delays in discovery, Dkt. 70 at 3, including production of ESI, which is the subject of another motion. No doubt that the parties' depositions have also been difficult to schedule, but two of those depositions have been completed already and the remaining two are scheduled to be completed by April 6. Party depositions are not related to the parties' dispute about third-party depositions.

3

**ARGUMENT**

The parties appear to agree on the standard applicable here: the Court "must grant" leave to take more than ten depositions to the extent that the depositions are consistent with Rule 26(b). *See* Fed. R. Civ. P. 30(a)(2). There can be no serious question that the witnesses disclosed by Defendants as trial witnesses satisfy the standard in Rule 26(b)(1), or that Defendants cannot identify any factor set out in Rule 26(b)(2)(C) that justifies barring these depositions. Defendants are of course correct that discovery must be confined to the issues presented by the case, but the depositions that Plaintiff seeks are not in the slightest sense peripheral—they are all critical to the case that must be presented to the Court at summary judgment and to the jury at trial. Limiting Plaintiff to ten depositions would prevent Plaintiff from proving her case. This Court should reject Defendants' arguments.

**I.     Plaintiff's Motion Is Ripe for Resolution**

Although the parties have been negotiating about depositions for weeks, to no avail, Defendants argue that Plaintiff's motion is premature and should be refiled once Plaintiff has taken eight more depositions. Dkt. 70 at 5-7. Defendants' suggested additional delay serves no purpose. The motion is ripe for resolution, and this Court should resolve it now.

The nature of the parties' dispute about the appropriate number of depositions will not have changed if the motion is re-filed next week or the week following, once Plaintiff has taken eight of the two dozen depositions now scheduled. Defendants have announced their intention to enforce Rule 30's deposition limit, with the caveat that they will agree to an additional five depositions per side. Plaintiff has noticed approximately twice that number of depositions.

Accordingly, further delay will do nothing to avoid the need for this Court's intervention to resolve the parties' dispute.

Moreover, if this Court were to set a restrictive limit on the number of depositions in this case (which it should not for the reasons discussed below and in Plaintiff's motion), then Plaintiff should have the opportunity to further consider which of her planned depositions to take. Plaintiff otherwise runs the risk of taking depositions in the order of witness availability, as they are currently scheduled, which might lead to depositions taken that Plaintiff might otherwise have skipped (and vice versa).

By invoking the limitation in Rule 30, Defendants have told Plaintiff that she must seek leave of court if she wishes to proceed with her planned depositions. This is not a case where Plaintiff has come to the Court before the parties have reached impasse on the question of depositions. Defendants have forced the issue, and it is ripe for resolution on the merits.

## II. Plaintiff Has Identified With Sufficient Particularity the Importance of the Depositions She Wishes to Take

Defendants state repeatedly that Plaintiff has not identified the witnesses whose depositions she intends to take or the reasons that those depositions are important to the case. But that's not accurate. Plaintiff identified 24 of the depositions she intends to take in the notice attached as Exhibit F to her motion, and she explained the importance of each witness's deposition on page 7 of her motion. *See* Dkt. 62 at 7 & Dkt. 62-7 (Exhibit F). In addition to those depositions, Plaintiff stated that she would likely need to take a Rule 30(b)(6) deposition of Greenwood's designee; a limited number of depositions of the dozens of emergency medical and hospital personnel who treated Charlie Todero between the time he was tased and his death; and perhaps additional participants in his autopsy and a designee from Taser. *Id.*

As explained in Plaintiff's motion, the particular witnesses identified each have knowledge critical to the disputes in this case:

- The three **individual Defendants**, **Holtzlieter**, **Moyer**, **Fillenwarth**, **Ison**, **Laut**, **Eck**, **Cummings**, **Roller**, **Godfrey**, **Howard**, **Mitchell**, **Pitts**, and **Venne** are all employees of Defendants City of Greenwood.
    - The individual Defendants and Eck are officers of the Greenwood Police Department who were present at the scene of the tasing, participated in it, used force against Todero, recorded part of the interaction on body cameras, and observed and heard what happened during the incident in dispute.
    - Holtzlieter, Moyer, Fillenwarth, Ison, and Laut are officers and leaders of the Greenwood Police Department who were involved in the immediate aftermath of the Todero tasing incident, conducted an internal investigation of the incident, located and interviewed witnesses, produced documents relating to the incident, and communicated with the media, the coroner's office, and other third parties regarding the incident.
    - Cummings and Roller are Greenwood Police Department employees who witnessed or participated in Todero's autopsy.
    - All of the witnesses above have knowledge of the policies and practices of the Greenwood Police Department.
    - Godfrey, Howard, Mitchell, Pitts, and Venne are employees of the Greenwood Fire Department who were witnesses at the scene of the Todero tasing, put Todero in the ambulance, and were present there when his heart first stopped, shortly after the tasing. In addition, these witnesses delivered Todero to the hospital and interacted with medical personnel there. They have knowledge of Todero's medical condition and his medical treatment.
- **Cunningham**, **Kalina**, and **Reliford** are officers of the Indiana State Police who interacted with Todero in the hours before his death. They have knowledge of Todero's behavior shortly before the tasing incident.
- **Hartman** is a doctor who treated Todero at St. Francis hospital and who had conversations with the individual Defendants and other employees of the Greenwood Police Department about whether their tasing of Todero had caused his cardiac arrest. In addition, Dr. Hartman provided ongoing care to Todero, along with other doctors and nurses at St. Francis.
- **Bukovich** and **Terrell** worked with AIT Labs, the third-party laboratory responsible for toxicology tests conducted on Todero. They have knowledge of the tests that were and were not conducted, as well as the results of those tests.
- **Geller** and **Malczweski** are employees of the Marion County Coroner's Office and participated in the autopsy of Todero. They have knowledge of the findings at autopsy and the reasons that Todero's autopsy report was changed, as described in Plaintiff's motion to compel ESI discovery. *See* Dkt. 61.
- **Orander**, **McQueen**, and **Clay** are each eyewitnesses who interacted with Todero shortly before the tasing incident. They have knowledge of Todero's behavior close in time to the incident.

Together, Defendants have disclosed a total of 27 witnesses. That number does not include the limited additional Rule 30(b)(6) depositions, treater depositions,[2] and depositions of experts (not yet disclosed by Defendants), which will be necessary before discovery is complete in this case. Accordingly, Plaintiff will likely need between 30 and 35 total depositions (two of which have already been taken) to fully develop the record for summary judgment and trial.

To be clear, the proposed depositions are not of peripheral players, nor are they exploratory examinations of witnesses who may have no knowledge of the case. On the contrary, they are witnesses with first-hand knowledge of the Todero tasing (because they were there at the scene or interacted with Todero shortly beforehand), of Todero's heart attacks and other health conditions caused by the tasing (because they treated him at the scene, in the ambulance, and in the hospital); of Todero's autopsy and cause of death; of the Greenwood Police Department's investigation into the Todero tasing and death; and of the Greenwood Police Department's official policies at issue in Plaintiff's *Monell* claims. Indeed, Defendants recognize the importance of these witnesses on pages 11 and 12 of their responsive brief, where they set out the plainly relevant knowledge that each of these witnesses possesses. Dkt. 70 at 11-12.

Finding out what these witnesses know is squarely within the scope of discovery authorized by Rule 26(b)(1), and none of the reasons for barring discovery described in 26(b)(2) is present here. Defendants make some suggestion that witnesses might be cumulative of one another, but that argument cannot hold water. On the one hand, those witnesses present at the scene will each have independent perspectives, and will have witnessed different versions of events, each of which are profoundly important to a case that will hinge on different versions of what happened during the Todero tasing. This is particularly the case given that Todero is no

---

[2] There are dozens of medical personnel who treated Todero in between the tasing and his death. Plaintiff does not expect to take the depositions of all of these treaters, but it will be necessary to take the depositions of at least four or five of them.

longer alive to tell his story. On the other hand, to the extent that witnesses have cumulative knowledge, Plaintiff has extremely little power to discover that fact, given that Defendants control many of these witnesses, an issue discussed in further detail below.

Moreover, Defendants argue in their response that Plaintiff can find out what a portion of these witnesses have to say by examining the recorded video statements and police reports that the Defendants and their employees made after the incident. But many of these interviews were conducted unilaterally by the Defendants and their employees, without any opportunity for Plaintiff to ask questions (because there was no civil case at that point). And the police reports represent Defendants' own take on the events at issue. Put another way, Defendants are telling the Court that Plaintiff should rely on Defendants' own internal investigation of the Todero tasing, without conducting her own discovery in the case. That proposal is not consistent with the Federal Rules. It is certainly does not constitute sufficient grounds to deny discovery. Plaintiff has made the showing necessary under the Federal Rules to justify the depositions of each of the witnesses described above.

### III. Defendants Have Disclosed Three Dozen Witnesses, Refuse to Limit Their Witness Lists, and Have Unilateral Control of Many of the Witnesses

Defendants' argument that this Court should limit Plaintiff to 15 depositions, including parties and experts disclosed by Defendants, is fatally undermined by the fact that Defendants have so far disclosed 37 witnesses in this case. Once the parties and Defendants' experts sit for depositions, Plaintiff would have approximately 10 depositions remaining. Defendants cannot reasonably expect to be permitted to call 37 witnesses at trial while denying Plaintiff the ability to conduct discovery that will be used to learn what these witnesses have to say and to lock them into their testimony before trial. Not to mention the deficient in the summary judgment record

that will be created if Plaintiff is permitted to depose only 25% of the witnesses with direct knowledge of the case.

But Defendants have taken the position both that they will not limit the list of witnesses on whom they intend to rely at trial and also that they will not participate in more than 15 depositions. This can only be a strategy by Defendants to limit discovery in a way that maximizes Defendants' chances at summary judgment and leaves Plaintiff in the dark at trial. Presumably Defendants will contest what occurred at the scene of the tasing, but they have effectively limited to 10 depositions Plaintiff's discovery of what went on at the scene, despite that they have disclosed 16 witnesses who were there and a half-dozen others who interacted with Todero close in time to the incident. To make matters worse, Defendants presumably intend to argue that their tasing did not cause Todero's death, and so their attempt to limit depositions in the case puts off limits third-party medical providers who treated Todero. Plaintiff would have to choose between those witnesses and the witnesses at the scene. The same is true of the Greenwood Police employees who have knowledge of the internal investigation into the Todero tasing. And the same is true of those Greenwood employees who possess all of the knowledge relevant to Plaintiff's *Monell* claims. In short, Defendants' limitation on depositions prevents Plaintiff from developing any area of her case sufficiently.

All of these problems are compounded by the fact that the Defendants control at least 16 of the witnesses they have disclosed. That means that Plaintiff will not have the opportunity to interview those witnesses or communicate with them in any way before trial. The knowledge that these witnesses have is absent from Defendants' responses to discovery. Defendants write in their response that Plaintiff has failed to explain what these witnesses in Defendants' control know, or why their testimony would not be duplicative of other testimony in the case. Dkt. 70 at

11. But that's precisely the point: Plaintiff has no idea what these witnesses will say without taking their depositions. Without those depositions, Plaintiff will be left in a position where she will be facing these witnesses at trial with no reason to know what they will say in response to questions, and with no way to effectively cross examine them. Rules 26 and 30 are not designed to place one party at such a disadvantage during civil litigation, and the resulting trial would be unfair. Defendants should not be allowed to simultaneously maintain a stable of witnesses for trial who they control and deny discovery into what those witnesses know.

**IV.    Plaintiff's Requested Depositions Are Not Unduly Burdensome or Costly Given the Nature of the Case**

In her motion, Plaintiff explained that this case presents serious and important civil rights issues that should be resolved on the merits and that are worthy of fulsome discovery. In response, Defendants give short shift to Plaintiff's view, remarking, "The Court well knows that every plaintiff who brings a case to federal court involving the loss of life and/or claiming a violation of federal constitutional rights believes that his or her case is serious and important." Dkt. 70 at 11. Defendants complete the thought by citing to an opinion about depositions in a patent infringement case, *id.*, demonstrating that they have missed the import of the dispute here.

This is not an everyday civil rights case where someone alleges a slight grievance against the government. It is not the nuisance case that Defendants apparently think that it is. On the contrary, Plaintiff lost her son because of the alleged unconstitutional actions of police officers, who tased Charlie Todero for over a minute and a half. It is admitted by Defendants that this happened even though Todero posed no risk to the Defendants. Defendants take the position that they did nothing wrong and that Todero's sudden and repeated heart attacks following the tasing were not related to the tasing at all. The alleged unjustified loss of human life at the hands of the

government is a dispute that should be tried on the merits, and it is one that appropriately demands the expenditure of resources on both sides.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion to increase the number of depositions beyond the 10-deposition limit in Rule 30. Plaintiff expects that she will be able to complete discovery with between 30 and 35 total depositions.

                                      RESPECTFULLY SUBMITTED,

                                      **Teresa Todero,**
                                      **as Special Administrator of the**
                                      **Estate of Charles Todero**

                    BY**:**    /s/ Steven Art
                               *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Steve Art
Vince Field
Sam Heppell
LOEVY & LOEVY
311 North Aberdeen St., Third Floor
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

11

## CERTIFICATE OF SERVICE

      I, Steven Art, an attorney, hereby certify that on March 12, 2018, I caused the foregoing PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION TO PERMIT MORE THAN 10 DEPOSITIONS PER SIDE to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

                                            /s/ Steven Art
                                            *One of Plaintiff's Attorneys*