UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERESA TODERO, as Special Administrator of the ESTATE OF CHARLES TODERO , | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO. 1:17-cv-1698-JPH-MJD |
| CITY OF GREENWOOD, BRIAN BLACKWELL, RENEE ELLIOT, ELIZABETH LAUT, and AS-YET UNIDENTIFIED GREENWOOD POLICE OFFICERS, | ) ) ) ) ) ) | |
| Defendants | ) | |

**DEFENDANT BLACKWELL'S REPLY IN SUPPORT OF HIS
MOTION TO EXCLUDE THE OPINIONS OF DR. MAYER RASHTIAN**

Comes now the Defendant, Brian Blackwell, by counsel, and for his Reply to Plaintiff's

Consolidated Opposition to Defendants' Motions to Exclude the Opinions of Dr. Mayer Rashtian[1],

states as follows:

**I. ARGUMENT**

**A. DR. RASHTIAN IS UNDOUBTEDLY A MEDICAL EXPERT, BUT HE DOES NOT HAVE THE EXPERTISE NECESSARY TO ANSWER THE QUESTION PLAINTIFF IS ASKING.**

Dr. Rashtian has impressive credentials and would undoubtedly be able to give many

different expert medical opinions in other cases, but he is not an expert on the specific question he

has been asked to answer in this case, *i.e.*, whether Charlie Todero suffered from Taser-induced

---

[1] Pursuant to Local Rule 7-1(b)(3), Plaintiff's Opposition was untimely, as many of her pleadings in this matter have been.

rhabdomyolysis.  It is Plaintiff's burden to establish the existence of that specific type of expertise.

*See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010).  *See also Shirley Carroll v. Otis Elevator*

*Co.*, 896 F.2d 210, 212 (7th Cir. 1990) ("Whether a witness is qualified as an expert can only be

determined by comparing the area in which the witness has superior knowledge, skill, experience,

or education with the subject matter of the witness's testimony.").  Instead of focusing on this

burden, Plaintiff devotes most of her opposition to demonstrate a point that no one disputes.  As

Plaintiff says, Rashtian has "impressive qualifications as a medical doctor with a specialty in

electrophysiology."  Plaintiff's Consolidated Opposition, p. 6.  Assuredly, Blackwell is impressed,

and he is not "ignoring" Rashtian's qualifications, *id.*, or arguing that they are "deficient."  *Id.* at 8.

Instead, Rashtian's qualifications are simply irrelevant to the question presented; therefore, he is not

qualified to give the opinion Plaintiff would like to advance.  *See United States v. Truitt*, 938 F.3d

885, 890 (7th Cir. 2019) ("Dr. Fogel's experience as a general psychologist in no way qualified him

to answer specific questions about the religious themes at play in this case."); *See also Hall v.*

*Flannery*, 840 F.3d 922, 930 (7th Cir. 2016) ("We do not doubt that Dr. Ruge is an intelligent

doctor who possesses considerable knowledge about surgery, pediatrics, and neurology. However,

the record lacks sufficient evidence demonstrating that this knowledge and the related experiences

render Dr. Ruge qualified to opine about Weekley's heart.").

Plaintiff has not provided this Court with any means to avoid this conclusion.  After one

clears away the discussion of Rashtian's undisputed qualifications in the field of electrophysiology,

only two relevant points remain in Plaintiff's Opposition.  First, Plaintiff observes that Rashtian

knows that "electrical stimulation of any form or voltage can induce rhabdomyolysis."  Plaintiff's

Consolidated Opposition, 7.  Second, Plaintiff points out that Rashtian "regularly treats patients with

rhabdomyolysis."  *Id.*  Neither of these points are particularly helpful to Plaintiff.

As to Plaintiff's first point, knowing that electrical stimulation can induce rhabdomyolysis hardly qualifies as expertise.  If it did, anyone who could read and comprehend WebMd would have expertise.  Moreover, knowing that electrical stimulation can induce rhabdomyolysis is entirely different than knowing that the electrical stimulation produced by a Taser can induce rhabdomyolysis, and this record does not give the Court any reason to believe that Rashtian has enough specialized knowledge to make the distinction.

Regarding Rashtian's experience with patients suffering from rhabdomyolys, it might be true that Rashtian treats patients *with* rhabdomyolysis, but he does not treat patients *for* their rhabdomyolysis.  Rashtian's practice consists of surgery, out-patient medicine, and research.  Doc. 194-1 at ECF p. 7.  Almost his entire surgical practice is devoted to ablation procedures, and his research has nothing to do with rhabdomyolysis or the impact of electrical weapons on the body.  *Id.* at pp. 6-7.  In fact, in those patients he sees who happen to have rhabdomyolysis (which represent an unknown percentage of his total patient population), the cause of the condition is not in doubt. According to Rashtian, many of those patients have developed rhabdomyolysis as a result of blunt force trauma or prolonged periods of immobility.  *Id.* at pp. 22-23, 37-38.  Perhaps more to the point, Rashtian's practice is a cardiology practice and he is only being consulted on the cardiology issues that patients with rhabdomyolysis might be experiencing.  *See, e.g., id.* at p. 32.  To say that this makes him an expert in the etiology of rhabdomyolysis is like saying that every physician is an expert in all the diseases and conditions suffered by their patients.  In other words, Rashtian does not devote any professional efforts toward attempting to mitigate or determine the etiology of rhabdomyolysis.  Therefore, it is unclear how he has sufficient expertise, either by training or experience, to determine the cause of the rhabdomyolysis suffered by Plaintiff's decedent.

Thus, Plaintiff cannot effectively distinguish this case from either *Truitt* or *Hall* simply by arguing that Rashtian has some basic knowledge of rhabdomyolysis   In *Truitt*, the opinion of an otherwise qualified forensic psychologist was excluded because he did not have enough experience with a particular psychological phenomenon to give a reliable opinion regarding the effect of that phenomenon. *Truitt*, 938 F.3d at 890.  In *Hall*, it was determined that a pediatric neurologist did not have the expertise to discuss a patient's cardiac issues.  *Hall*, 840 F.3d at 929-930.  Rashtian is in exactly the same position as the psychologist in *Truitt* and the neurologist in *Hall*.  He is extremely qualified in his field, but his testimony in this case is far afield of his expertise.  As a medical doctor, he almost certainly knows about rhabdomyolysis.  The same could undoubtedly have been said about the neurologist in *Hall* and the psychologist in *Truitt*.  Moreover, as discussed above, Plaintiff is overstating the facts when she suggests that Rashtian has extensive experience with rhabdomyolysis.  Plaintiff cannot avoid the conclusion that *Hall* and *Truitt* control in this situation.  Pursuant to those cases, Rashtian's opinion regarding the cause of rhabdomyolysis should be excluded.

B.  **NO MATTER HOW PLAINTIFF DESCRIBES IT, DR. RASHTIAN CONDUCTED AN UNRELIABLE FORM OF DIFFERENTIAL ETIOLOGY TO ARRIVE AT HIS OPINION.**

Dr. Rashtian did not employ a reliable methodology to arrive at his conclusions in this case. For a methodology to be reliable, there must be a connection between the facts (upon which experts in the field would reasonably rely) and the opinion being offered.  *See Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 781 (7th Cir. 2017).  Rashtian describes his methodology as the application of "common sense." Doc. 194-1 at ECF p. 28.  Plaintiff prefers to call it the "building block" method.  Plaintiff's Consolidated Opposition, p. 19.  Whatever they prefer to call it, both Plaintiff and Rashtian are describing a differential etiology analysis.  That is not objectionable in and of itself.  When done properly, a differential etiology is highly reliable and widely accepted.

*See Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).  The problem is that Rashtian did not apply it properly.

First, there can be no doubt that Rashtian used a differential etiology to reach his conclusion.  "[I]n a differential etiology, the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment." *Id.*  That is exactly what Rashtian attempted to do here.  As Plaintiff says: "Dr. Rashtian did not base [his] … determination on the mere fact that Defendant Blackwell tased Charlie, but rather on the additional facts that Charlie was **neither** immobile **nor** intoxicated, two factors commonly associated with rhabdomyolysis." Plaintiff's Consolidated Opposition, p. 20 (emphasis added).  Also, according to Plaintiff: "[Rashtian] examined whether any other plausible cause for the rhabdomyolysis might exist, and proceeded to rule out those other possibilities." *Id.* at 23.  Put a slightly different way, Rashtian ruled in a few potential causes of rhabdomyolysis (immobility, intoxication, and electrical stimulation), "systematically" ruled out several possible causes (immobility and intoxication), and arrived at his conclusion that the last remaining possible cause (electrical stimulation) was the cause-in-fact. This is the epitome of a differential etiology.  It is also woefully inadequate in this case.

Rashtian failed to consider the myriad possible causes of rhabdomyolysis.  It is not, as Plaintiff suggests, just that Rashtian failed to consider exertion as a possible cause.  There is also no indication that he actively considered medicinal drug use, infections, endocrine disorders or neuroleptic malignant syndrome.  All these things, as mentioned in the journal article cited by Blackwell in his opening brief, are known causes of rhabdomyolysis, and many of these possible causes are present or possibly present in this case.  For instance, the medical records from Saint

Francis Hospital show that Charlie Todero suffered from various infections, including tricuspid

valve endocarditis[2] and sepsis.[3] *See* Exhibit A (p. 190, Saint Francis' response to City of

Greewood's non-party request).  Rashtian reviewed this material, and even testified that he

considered whether Todero had an infection.  Doc. 206-1 at ECF p. 2; Doc. 194-1 at ECF p. 33.  Yet

there is absolutely no indication that this is true.  It would be impossible to rule out infection as a

cause when Todero clearly suffered from infection.  The failure to consider this and other obvious

potential causes of rhabdomyolysis renders Rashtian's methodology suspect and unreliable.  *See*

*Brown v. Burlington N. Santa Fe Ry.*, 765 F.3d 765, 774 (7th Cir. 2014) ("The failure to rule out

obvious potential alternative causes is therefore fatal to [the doctor's] testimony.").

Finally, Rashtian's methodology suffers from a quantitative deficiency.  Specifically,

Rashtian does not know how much electricity was applied to Todero by the Taser.  (Deposition of

Mayer Rashtian, pp. 55, 98).  Plaintiff asserts that this has no bearing on the admissibility of the

opinion, but she is incorrect.  To be admissible, an expert's opinion must be supported by "reliable,

testable methodology."  *Brown*, 765 F.3d at 776.  It is unclear how one would test the assertion that

electricity of an unknown current and voltage caused muscle death in the human body.  It is as if

Rashtian is asserting that anything is possible.  Of course, anything is possible in a purely theoretical

sense, but Rashtian is not posing a theory.  He is giving an opinion about a question of fact, and his

subjective understanding is not reliable scientific evidence.  Consequently, his opinion that Todero's

rhabdomyolysis was caused by the application of the Taser should be excluded.

---

[2] This is an infection of the tricuspid valve indicative of intravenous drug use.  Syed T. Hussain, et al., *Tricuspid Valve Endocarditis*, ANNALS OF CARDIOTHORACIC SURGERY,
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5494428 (last visited February 21, 2020).
[3] This is a condition of the blood most often caused by bacterial infection.  *See What is Sepsis?*, WEBMD.COM,
http://webmd.com/a-to-z-guides/sepsis-septicemia-blood-infection#1

## II.  CONCLUSION

WHEREFORE, Defendant, Brian Blackwell, by counsel, objects and moves the court to exclude the opinions offered by Plaintiff's medical expert, Mayer Rashtian, M.D., and for all other relief proper in the premises.

Respectfully submitted,

POLLACK LAW FIRM, P.C.

s/Caren L. Pollack
Caren L. Pollack Attorney No. 11897-49

s/Zachary J. Stock
Zachary J. Stock, Attorney No.  23163-49
*Attorneys for Defendant, Brian Blackwell*

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing was filed electronically on February 25, 2020.   Notice of this filing will be sent to the following parties by operation of the Court's ECF system:

D. Samuel Heppell
Steven E. Art
Jonathan I. Loevy
Arthur Loevy
Theresa Kleinhaus
LOEVY & LOEVY
311 N. Aberdeen Street, 3rd Floor
Chicago, IL 60607
*Attorneys for Plaintiff*

James S. Stephenson
Mark A. Holloway
Pamela G. Schneeman
STEPHENSON MOROW & SEMLER
3077 East 98th Street, Suite 240
Indianapolis, IN 46280
*Attorneys for Defendants, City of Greenwood, Renee Elliot, and Elizabeth Laut*

s/Caren L. Pollack
Caren L. Pollack

POLLACK LAW FIRM, P.C.
10333 N. Meridian Street, Suite 111
Indianapolis, Indiana  46290
Ph: (317) 660-4880
Fx: (317) 660-4888
cpollack@pollacklawpc.com

7