IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERESA TODERO, as Special Administrator of the ESTATE OF CHARLES TODERO,<br><br>*Plaintiff*,<br><br>v.<br><br>CITY OF GREENWOOD, BRIAN BLACKWELL, RENEE ELLIOTT, ELIZABETH LAUT, and AS-YET UNIDENTIFIED GREENWOOD POLICE OFFICERS,<br><br>*Defendants*. | Case No. 1:17-cv-1698-JPH-MJD<br><br>Judge James Patrick Hanlon<br><br>Magistrate Judge Mark J. Dinsmore<br><br>JURY TRIAL DEMANDED |

## **PLAINTIFF'S TRIAL BRIEF REGARDING CAUSE OF DEATH**

Plaintiff Teresa Todero, as Special Administrator of the Estate of Charles Todero, by her undersigned counsel, respectfully submits the following trial brief regarding cause of death.

### INTRODUCTION

On May 29, 2016, Defendant Blackwell repeatedly shot his Taser at Charlie Todero, who had been sitting on the curb when he got up and began to walk away from Blackwell. It is undisputed that Blackwell pulled the Taser trigger 16 times, activating his Taser for a total of 98 seconds in an extremely short period of time, something that his own training identified as a significant safety concern. Body camera footage from two Greenwood police officers on scene capturing the moments immediately after Blackwell's last Taser shot show Charlie Todero collapsed on the side of the road, eyes closed, delirious, and hyperventilating. Charlie's limp body was lifted onto a stretcher and into the back of an ambulance, and his heart stopped less than half an hour after the Taser shots. Charlie never recovered. Over the following days, his

heart stopped repeatedly, his condition worsened, he remained largely unconscious, and he ultimately died on June 11, 2016.

Defendants are seeking to prevent the jury from hearing this evidence and are seeking to prohibit Plaintiff from asking the jury to award compensatory damages for Charlie's loss of life. They do so on the basis of this Court's *Daubert* ruling, which has precluded Plaintiff's medical expert Dr. Rashtian from offering his opinion as to a specific physiological mechanism by which Defendant Blackwell's Taser use caused Charlie Todero's death. Plaintiff respectfully submits this trial brief to clarify that the applicable legal framework for Plaintiff's federal and state claims does not require Plaintiff to support her causation theory with a specific expert opinion. Regardless of the Court's *Daubert* ruling, the jury will still be required to resolve the issue of causation at the upcoming trial.

### A. Expert Testimony is Not Required to Prove Causation for Plaintiff's Federal Claims.

The Defendants' effort to take the causation question away from the jury is premised entirely on the fact that the Court barred Plaintiff's expert from testifying about the specific medical cause of Charlie Todero's death. But in the Seventh Circuit, experts are generally not required in excessive force or delayed medical care cases, and plaintiffs are not required to prove the specific medical cause of the relevant injuries. *See, e.g.*, *Ortiz v. City of Chicago*, 656 F.3d 523, 534 (7th Cir. 2011); *see also Gayton*, 593 F.3d at 624 (in death case where plaintiff alleged that delayed medical care violated the constitution, "even if the plaintiff could not proffer expert testimony in this case, he still would have adequate causation evidence to reach trial against" a defendant nurse based on medical records and testimony); *Hendrickson v. Cooper*, 589 F.3d 887, 892 (7th Cir. 2009) (expert testimony not required when plaintiff alleged that beating led to "severe, recurring pain"); *Shea v. Kohler*, 12 C 50201, 2017 WL 3475683, at *3 (N.D. Ill. Aug.

2

14, 2017) (holding that plaintiff was not permitted to offer medical diagnosis without expert testimony, but that "[a]n expert is not required to connect getting kicked in the head with headaches, vision problems, or slowed thinking, for example. This is within the common experiences or observations of jurors."), *aff'd sub nom. Shea v. Winnebago County Sheriff's Dep't*, 746 Fed. Appx. 541 (7th Cir. 2018); *Cummings v. Quakenbush*, 1:12-CV-01538-JMS, 2014 WL 2511582, at *13 and n.12 (S.D. Ind. June 3, 2014) (in Fourth Amendment case alleging objectively unreasonable acts by a medical professional, denying summary judgment on the ground that there is no requirement for expert testimony to prove causation, and explaining that the defendant could raise the argument again at trial if plaintiff failed to prove his case); *Coleman v. Semona*, 1:09-CV-0734-DML-LJM, 2011 WL 1740302, at *2 (S.D. Ind. May 5, 2011) ("as the Seventh Circuit has ruled, expert medical testimony on causation is not always required in excessive force cases or delay or denial of medical care cases"). As the Seventh Circuit has explained, "[n]o expert testimony is required to assist jurors in determining the cause of injuries that are within their common experiences or observations." *Hendrickson*, 589 F.3d at 892.

    *Ortiz* is particularly instructive and shows that experts are not required even in cases involving significantly more complex medical inquiries. *Ortiz* involved the death of May Molina, who "died in custody over 24 hours after" being arrested. *Ortiz*, 656 F.3d at 526. When she was arrested, "Molina was disabled, obese, and in poor health" and "took daily medications for several ailments, including diabetes, a thyroid condition, hypertension, and asthma." *Id*. She was not provided with any of her medication while in lockup, and despite the fact that her lawyer had demanded she receive medical care when he observed that "she could hardly speak, walk, or

3

stand" approximately "16 hours into her detention," Molina never received any care and eventually "died alone in her cell." *Id.*

In reversing the district court's grant of summary judgment, the Seventh Circuit noted that the plaintiff was not required to "prove that the failure of the defendants to provide Molina with access to her medications proximately caused her death," and was "not required to show 'specific causation' for a particular result." *Id.* at 534-35. Rather, she only needed "to establish that the failure to take Molina to the hospital was unreasonable and that it caused her some harm." *Id.*

*Hendrickson*, an excessive force case, is also instructive. There, the plaintiff alleged that he was beaten by a guard and developed long-lasting back pain as a result. In rejecting the defendant's argument that expert testimony was needed to prove that the beating caused plaintiff's back pain, the Seventh Circuit succinctly stated that "the cause of [plaintiff's] back was perfectly clear: [defendant] beat him." *Hendrickson*, 589 F.3d at 892. The court did not require expert testimony to show the exact medical cause of the back pain. It was enough that plaintiff "testified that [defendant] beat him up and that it hurt really bad." *Id.* Although Mr. Todero will not be able to testify about what the Defendants did to him, the legal principle is the same. Mr. Todero was tased, his heart stopped almost immediately, and then he died. The jury does not need an expert to understand that or to find Defendants liable and award damages.

    **B.**  <u>**Expert Testimony Is Not Required to Prove Plaintiff's State-Law Claims.**</u>

Expert testimony is also not required to prove causation for Plaintiff's state-law wrongful death claim. *Lane v. Walgreen* sets out the legal standard for when experts are needed to prove causation in Indiana wrongful-death cases, and shows why expert testimony is not required in this case. *Lane v. Walgreen Co.*, 1:12-CV-01180-SEB, 2014 WL 2881543, at *1 (S.D. Ind. June 24, 2014). Specifically, expert testimony is required for an Indiana state-law claim only when

causation requires resolving complex medical questions outside of the comprehension of the average lay person. *See Lane*, 2014 WL 2881543, at *8.

*Lane* is a prime example of a case where expert testimony would be required given the complexity of the issues. The plaintiff in *Lane* was the personal representative of the estate of a man who died in his mid-70s after suffering "from a number of chronic health problems, including hypertension, congestive heart failure, atrial fibrillation, type 2 diabetes, and chronic kidney disease," in addition to cancer. *Id*. at *1. Mr. Lane's doctor prescribed him opioids for pain, but the pharmacy mistakenly gave him a much higher dose than had been prescribed, after which Mr. Lane fell and was injured. *Id*. He died 18 months later in hospice when his doctor determined that he was too sick for chemotherapy. *Id*. at * 2, 8. The estate brought a wrongful-death claim against Walgreen Co., alleging that Mr. Lane died because of the pharmacist's mistake in giving Mr. Lane a higher dose of opioids than the doctor had prescribed. *Id*. at *1, *8. Given Mr. Lane's extensive prior medical history (including his extremely poor health at the time of the incident) and the fact that 18 months passed between when he received the wrong prescription and when he died (a time that included his doctor placing him in hospice care because of his cancer), the court understandably held that expert testimony would have been necessary to help a jury understand how the pharmacist's mistake might have caused Mr. Lane's death. *Id*. at *8.

This is not a medical negligence case, and it falls on the complete opposite end of the spectrum from *Lane*. Mr. Todero was a healthy young man who was repeatedly tased by a police officer, immediately taken to the hospital, and died without ever going home. Deciding whether the Defendants' actions in this case caused Mr. Todero's death is not beyond the comprehension of lay people any more than they are in other cases involving alleged physical assaults. *See, e.g.*,

5

*Singh v. Lyday*, 889 N.E.2d 342, 360 (Ind. Ct. App. 2008) (expert required to prove causation for doctor's "malpractice or negligence *as a therapist*," but not for battery based on the same underlying facts) (emphasis in original). *Cf. Greenwade v. State*, 273 Ind. 676, 681, 408 N.E.2d 542, 545 (1980) ("The testimony of the investigator, the photographs, and appellant's own statement provided a sufficient basis for the trier of fact to infer to a certainty beyond a reasonable doubt that the victim died of gunshot wounds inflicted by appellant. The law prefers but does not demand direct expert medical testimony in support of the cause of death in a homicide prosecution.").

    **C.**    **The Jury Will Hear a Multitude of Evidence at Trial to Support Plaintiff's Position that Blackwell's Excessive Taser Use Caused Charlie Todero's Death.**

Even without the ability to present a stand-alone expert opinion laying out the specific medical processes by which the Taser use led to Charlie Todero's death, Plaintiff has amassed ample evidence which she will present at trial to support the jury's reasonable conclusion that Defendant Blackwell's excessive Taser use caused the death.

Without purporting to offer an exhaustive list of the anticipated evidence at trial, Plaintiff respectfully submits that the following facts far surpass what would be required for a reasonable jury, applying its rational understanding to the evidence presented, to conclude that Defendants are responsible for Charlie Todero's death:

-the jury will hear testimony and see video footage portraying the stark contrast between Mr. Todero's behavior and appearance immediately prior to, and immediately following Defendant Blackwell's 16 Taser shots: from standing and walking without difficulty prior to the tasing, *see, e.g.*, Dkt. 272-13 at 44:10-23, 46:6-13, to being slumped on the curb, hyperventilating and almost completely unresponsive, within a couple of minutes afterwards, *see, e.g.*, Dkt. 125-1 at 2:00-3:00; Dkt. 125-67.

-the jury will hear that by the time paramedics arrived on scene, Mr. Todero "was like a sack of potatoes," sweating and with his eyes closed. Dkt. 125-28 at 26:2-4.

-the jury will hear that Charli Todero's condition continued to rapidly worsen en route to the hospital, and his heart stopped at 12:18pm, less than half an hour after Blackwell first encountered Mr. Todero. Dkt. 125-48.

-the jury will hear that Defendant Blackwell received training to "avoid extended durations" of Taser use, and that 15 seconds of Taser exposure (far less than the 90 seconds at issue here) is a "significant safety point." Dkt. 125-55 at 80:13-84:22.

-the jury will hear from Defendants' own Taser expert that the Taser corporation warns police departments and police officers that Taser use "causes physiologic and/or metabolic effects that may increase the risk of death or serious injury, Dkt. 202-5 at 218:8-230:16.

-the jury will hear from Defendants' medical expert that safety concerns would preclude conducting a scientific study involving the duration of Taser exposure that Defendant Blackwell subjected Charlie Todero to in this case, Dkt. 272-12 at 96:17-100:4.

In sum, there is no shortage of evidence in the case that will allow the jury to conclude that Defendants caused Charlie Todero's death. In fact, there is even less of a basis to require expert testimony in this case than there would have been in *Ortiz* and the other medical-care cases cited above. All of those cases involved complicated questions about medical conditions and medical treatment. This case, by contrast, involves an incident of alleged excessive force that resulted in death similar to *Hendrickson*. Although Plaintiff respectfully submits that her expert should not have been barred from opining about causation, neither Seventh Circuit nor Indiana case law requires a plaintiff in this situation to have an expert provide testimony to support a jury

7

awarding damages for Charlie Todero's loss of life as a result of Defendants' acts and omissions which caused Charlie Todero's death.

                                  RESPECTFULLY SUBMITTED,
**Teresa Todero,**
**as Special Administrator of the**
**Estate of Charles Todero**

BY:   /s/ Sam Heppell
         *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Scott Rauscher
Steve Art
Theresa Kleinhaus
Scott Drury
Sam Heppell
LOEVY & LOEVY
311 North Aberdeen St.
Chicago, IL 60607
(312) 243-5900

## CERTIFICATE OF SERVICE

     I, Sam Heppell, an attorney, hereby certify that on September 14, 2021, I caused the foregoing document to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

                                  /s/ Sam Heppell
                                 *One of Plaintiff's Attorneys*