UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TERESA TODERO as Special Administrator of the ESTATE OF CHARLES TODERO,, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:17-cv-01698-JPH-MJD |
| BRIAN BLACKWELL, RENEE ELLIOT, ELIZABETH LAUT, CITY OF GREENWOOD, | ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER ON MOTIONS IN LIMINE**

The parties have filed a combined forty-five motions in limine.  A table summarizing the motions and rulings is attached as Appendix A.  Consistent with the Court's instructions at the final pretrial conference, counsel shall raise reasonably foreseeable evidentiary issues in advance outside the presence of the jury—generally before or after the trial day, over lunch, or at a break.  That includes situations when a party believes that the evidence at trial justifies a modification to this order.  To avoid wasting the jury's time, counsel must make every effort to avoid raising reasonably foreseeable issues when they would require a sidebar or recess, which will be allowed only in extenuating circumstances.

1

## I.      Applicable Law

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002).  Still, orders in limine are preliminary and "subject to change when the case unfolds" because actual testimony may differ from a pretrial proffer.  *Luce v. United States*, 469 U.S. 38, 41 (1984).  A trial judge does not bind himself by ruling on a motion in limine and "may always change his mind during the course of a trial."  *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## II.      Analysis

### A. Ms. Todero's Motions in Limine

#### 1.      Undisclosed expert opinions from Dr. Hartman

Ms. Todero argues that Dr. Hartman should not be allowed to present expert testimony at trial because he was not disclosed as an expert under Federal Rule of Civil Procedure 26.  Dkt. 271 at 7–12.  Greenwood Defendants respond that Dr. Hartman will testify as a fact witness, dkt. 284 at 1–2, and Officer Blackwell responds that Dr. Hartman should be allowed to offer opinions based "on facts or data in the case that [he] has personally observed," dkt. 285 at 1–4.

For Dr. Hartman to testify as an expert, Defendants were required to disclose "the subject matter on which the witness is expected to present" opinion testimony.  Fed. R. Civ. P. 26(a)(2)(C).  Officer Blackwell argues that "Defendants' initial disclosures essentially provided this information," but his

disclosure said only that Dr. Hartman "has knowledge of treatment rendered to Charles Todero and his physical condition while a patient at St. Francis Hospital." Dkt. 272-2 at 4. Greenwood Defendants' disclosure similarly said only that Dr. Hartman "[p]ossesses information regarding Todero's medical condition and treatment at St. Francis." Dkt. 272-3 at 3. These fact-witness disclosures—the only disclosures designated by Defendants for Dr. Hartman— are "plainly inadequate" to designate Dr. Hartman as an expert witness. *Karum Holdings LLC v. Lowe's Cos., Inc.*, 895 F.3d 944, 951 (7th Cir. 2018). "[N]othing in the . . . disclosure[s] stated or suggested [that Dr. Hartman] was an expert witness." *Id.* The "duty to disclose a witness *as an expert* is *not* excused when a witness who will testify as a fact witness *and* as an expert witness is disclosed as a fact witness." *Id.* (emphases in original).

Dr. Hartman's expert testimony is therefore "subject to automatic exclusion under Rule 37(c)(1)." *Id.* at 952. Officer Blackwell nevertheless argues that any failure to disclose was "justified or harmless" because Dr. Hartman "is not expected to offer any opinions which he did not share with Plaintiff in his deposition." Dkt. 285 at 3. But deficient disclosures are not cured "with later deposition testimony." *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008). Indeed, Ms. Todero argues that she relied on Defendants' fact-witness disclosures "in electing not to pursue vigorous cross-examination of [ ] opinions at the deposition" and in deciding not to challenge

any opinions with a *Daubert* motion.[1]  Dkt. 271 at 8; *see Karum Holdings*, 895 F.3d at 952 (affirming the exclusion of undisclosed opinions when the opposing party was familiar with the witness but "had no reason to take discovery on his qualification and expertise" and lost the opportunity to challenge the opinions under *Daubert*).

Ms. Todero's motion is therefore **GRANTED**; Dr. Hartman may testify as a fact witness but **may not offer opinions** under Federal Rules of Evidence 702, 703, or 705.  However, this order does not bar "ordinary, percipient observations" that Dr. Hartman made during his work as a health care professional.  *Patterson v. Baker*, 990 F.3d 1082, 1086 (7th Cir. 2021) (expressing skepticism that the "limited and commonsense" observation that a beating "could possibly result in bruising" was an expert opinion requiring disclosure).  The parties **shall confer** to address whether any of Dr. Hartman's testimony is expected to remain at issue under this ruling.

### 2.    Undisclosed witnesses

By agreement of the parties, no party may call fact witnesses not disclosed by that party.  *See* dkt. 271 at 12–14; dkt. 284 at 3; dkt. 285 at 4.

### 3.    Defendants' financial ability to pay a judgment

By agreement of the parties, the parties may not reference Defendants' financial ability to pay a judgment.  *See* dkt. 271 at 14–15; dkt. 284 at 3; dkt. 285 at 4.

---

[1] Indeed, Ms. Todero has identified several of Dr. Hartman's opinions—including about cause of death, drug use, and Taser effects—that have not had their reliability tested through *Daubert* briefing.  Dkt. 271 at 9–12.

### 4.    Location of Ms. Todero's attorneys

No reference regarding where *any counsel* practice or reside may be made in front of the jury.  *See* dkt. 271 at 15.  That information is not relevant to any issue that the jury must decide.

### 5.    Defendants' employment history

Ms. Todero argues that Defendants should be barred from introducing evidence "of their 'good character' by reference to prior work-related commendations, awards, complimentary history, or performance reviews."  Dkt. 271 at 15–16.  Greenwood Defendants respond that some "brief, general background" should be allowed, dkt. 284 at 4, and Officer Blackwell responds that it would be "unfair and extremely prejudicial" to allow evidence of negative events but not positive ones, dkt. 285 at 5.

Because the jury must evaluate the officers' credibility, they may testify generally about their personal background; education and work experience, including length of service; positions held, and changes in rank.  *See Rodriguez v. Scillia*, 193 F.3d 913, 919 (7th Cir. 1999).  They may not, however, testify about commendations, awards, or similar honors, because any probative value of that evidence would be substantially outweighed by the risk of unfair prejudice, confusing the issues, and wasting time.  Fed. R. Evid. 403; *See White v. Gerardot*, No. 1:05-cv-382, 2008 WL 4724000 at *1 (N.D. Ind. Oct. 24, 2008).

### 6.     Employment or criminal consequences for Defendants

By agreement of the parties, Defendants may not reference any potential employment or criminal consequences for Defendants.  Dkt. 271 at 17; dkt. 284 at 5; dkt. 285 at 5.

### 7.     Jurors' pecuniary interests

By agreement of the parties, Defendants may not reference jurors' potential pecuniary interests.  Dkt. 271 at 17–18; dkt. 284 at 5; dkt. 285 at 5.

### 8.     Duplicative witness examinations

As ordered at the final pretrial conference, this motion is **DENIED**; the Court will not require Defendants to "designate one primary attorney per witness per cross-examination." Dkt. 271 at 18–19.  Plaintiffs may object as needed at trial to questions that have been asked and answered or that otherwise would elicit cumulative testimony.

### 9.     Former claims or former defendants

By agreement of the parties, Defendants may not reference claims or defendants that have been dismissed.  Dkt. 271 at 19–20; dkt. 284 at 6; dkt. 285 at 6.

### 10.     Dr. Kroll's opinions about electrocution

Ms. Todero argues that Dr. Kroll's opinion ruling out electrocution as a cause of death should be excluded because "electrocution . . . is not an issue [in] this case." Dkt. 271 at 20–22.  Greenwood Defendants respond that the effects of electricity from a Taser are at issue, and that Dr. Kroll's testimony is relevant to those issues.  Dkt. 284 at 6–8.

While Ms. Todero might not argue that electrocution specifically caused Mr. Todero's death, causation and the effects of Tasers are central issues in this trial. Therefore, Dr. Kroll's testimony on those topics, including his excluding electrocution as the cause of death, is relevant and helpful to the jury. This motion is therefore **DENIED**.

### 11.  Dr. Kroll's opinions about the safety of Tasers

Ms. Todero argues that Dr. Kroll should be barred from "offering any opinions or testimony about the general safety of Tasers." Dkt. 271 at 22–23. Greenwood Defendants respond that Dr. Kroll will provide background information about Tasers in order to explain how safe they may be. Because Taser discharges, their effects on Mr. Todero, and their reasonableness are central issues in this case, Dr. Kroll's testimony about Tasers is relevant and helpful to the jury. This motion is thus **DENIED**.

### 12.  Mr. Todero's heart attack at age sixteen

Ms. Todero seeks to exclude testimony related to a drug overdose and related heart attack that Mr. Todero may have suffered when he was sixteen, about fourteen years before his death. Dkt. 271 at 24–26. She argues that it's irrelevant and that any relevance is substantially outweighed by the danger of unfair prejudice. *Id.* Greenwood Defendants respond that the heart attack is relevant to explain Mr. Todero's cause of death and to support drug use as the cause of Excited Delirium Syndrome. Dkt. 284 at 10–11. Officer Blackwell adds that the prior heart attack is relevant to Mr. Todero's life expectancy for damages calculations. Dkt. 285 at 6–7.

Because there is no designated expert testimony about how a prior heart attack might affect the results of being tased or how it might affect life expectancy, argument advancing such theories would be speculative. Moreover, the evidence identified by Defendants regarding the alleged heart attack—testimony of family members who said they knew it happened—is meager, vague, and uncorroborated by medical records.

For these reasons, any probative value a prior heart attack and related drug use are substantially outweighed by the risks of unfair prejudice, confusing the issues, and misleading the jury. Fed. R. Evid. 403; *cf. Lewis v. City of Chicago Police Dept.*, 590 F.3d 427, 443 (7th Cir. 2009).

### 13. Mr. Todero's being under the influence of spice or some other undetected drug at the time of the incident

Ms. Todero has filed a motion in limine to exclude evidence that Mr. Todero may have been under the influence of synthetic marijuana (spice) or some other undetected drug at the time of the incident.[2] Dkt. 271 at 26–28. She contends that the only evidence of drug use is a hospital toxicology screen that was negative for all drugs except marijuana, so any relevance to potential drug use at the time is substantially outweighed by the danger of unfair prejudice. Defendants respond that Mr. Todero's actions were consistent with drug use, and that expert testimony also supports that he was under the influence of synthetic marijuana. Dkt. 284 at 12–16; dkt. 285 at 7.

---

[2] Separately, Ms. Todero's motion in limine number 14 seeks to exclude evidence that Mr. Todero tested positive for marijuana on the day of the incident.

8

The only evidence identified by Defendants to establish that Mr. Todero was under the influence of drugs at the time is the hospital toxicology report. While Mr. Todero tested positive for marijuana, no other drugs were detected, so any testimony that he may have been under the influence of other drugs would be mere speculation.  The fact that the screen does not test for certain drugs, such as synthetic marijuana, is not evidence that Mr. Todero may have been under their influence.  Defendants also rely on Dr. Vilke's opinion that Mr. Todero was suffering from Excited Delirium Syndrome, which was consistent with synthetic marijuana (spice) intoxication.  But the Court has since excluded that opinion as resting on only speculation, and the same analysis applies here.  Dkt. 310 at 16–17.

In their response, Defendants separately argue that individual officers may testify that Mr. Todero appeared to be under the influence of drugs.  Dkt. 284 at 15–16; dkt. 285 at 7.  While such testimony—if based on an officer's training and experience and personal observations of Mr. Todero—may be admissible, a more detailed evidentiary proffer and opportunity for Plaintiff to respond would be required.  Before eliciting such testimony at trial, Defendants therefore must raise the issue with the Court outside the presence of the jury.

Ms. Todero's motion is **GRANTED**; Defendants may not elicit evidence or argue that Mr. Todero was under the influence of any undetected drug at the time of the incident.

### 14.    Cannabinoids in Mr. Todero's system at the time of the incident

Ms. Todero argues that evidence that Mr. Todero tested positive for marijuana at the hospital after the incident should be excluded as irrelevant. Dkt. 271 at 29–30.  Greenwood Defendants argue that the positive test for marijuana is relevant because it makes it more likely that Mr. Todero would use synthetic marijuana, which in turn is relevant to Dr. Vilke's testimony about Excited Delirium Syndrome.  But regardless of whether that would be impermissible propensity evidence, it cannot be relevant to Dr. Vilke's testimony because his opinion that prior drug use, including spice use, is consistent with excited delirium syndrome has since been excluded.  Dkt. 310 at 16–17.  Officer Blackwell does not argue that the positive result for marijuana is relevant, but only that there is no longer a risk of unfair prejudice because marijuana is no longer stigmatized.  Dkt. 285 at 7.

Plaintiff's motion in limine on this issue is therefore **GRANTED** because Defendants have not shown that the positive result for marijuana is relevant, and because any probative value would be substantially outweighed by the danger of unfair prejudice and confusing the issues.  Fed. R. Evid. 401, 403.

### 15.    Mr. Todero's prior acts and past conduct

Ms. Todero seeks to exclude evidence of several categories of Mr. Todero's alleged prior bad acts or past conduct.  Dkt. 271 at 30–39.

### a. Limiting evidence to what the officers knew at the time of the incident

This motion in limine substantially overlaps with Ms. Todero's motion in limine number 23, so they must be read together on this issue.

Ms. Todero argues that Fourth Amendment reasonableness is based on what the officers knew at the time of the incident, so "the admissible evidence at trial should begin and end with what Blackwell knew when he encountered Charlie Todero on May 29, 2016." Dkt. 271 at 31.  Officer Blackwell responds that the events leading up to the incident are relevant to Mr. Todero's mental state and medical conditions, which are relevant to causation.  Dkt. 285 at 7–8.

As to Defendants' constitutional liability, "[t]he reasonableness of the force used depends on the totality of the facts and circumstances known to the officer at the time the force is applied."  *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 724 (7th Cir. 2013).  The facts leading up to the incident are therefore relevant to liability only to the extent that the officers knew them.

The questions of Mr. Todero's health and medical causation are more complex.  Officer Blackwell argues that Mr. Todero's "actions and behavior in the 24 hours preceding his interaction with Blackwell relates to, and helps shed light on, his medical conditions." Dkt. 285 at 8.  However, Officer Blackwell has not explained how the facts from those 24 hours are relevant to medical causation, except apparent speculation that being detained on a psychiatric hold and drinking vodka are relevant to that question.  *Id.*  The Court therefore **GRANTS** this motion in line with the Court's ruling on Ms. Todero's motion in limine number 23.

### b. Arrests, charges, and other police contact

By agreement of the parties, Defendants may not reference any prior arrests, charges, or police contact that Mr. Todero may have had.  *See* dkt. 271 at 34–35; dkt. 285 at 8–9.

However, as discussed at the final pretrial conference, the parties agreed that some explanation of how Officer Blackwell recognized Mr. Todero may be necessary.  The parties **shall confer** in an attempt to reach a stipulation or stipulated questions to establish that Mr. Blackwell knew Mr. Todero from prior interactions.

### c. Substance abuse

Ms. Todero argues that any evidence of prior substance abuse by Mr. Todero should be excluded because any relevance is substantially outweighed by the danger of unfair prejudice.  Dkt. 271 at 36–37.  At the final pretrial conference, Officer Blackwell argued that this evidence is at least relevant to what Mr. Todero's life expectancy would have been.

Defendants have not identified any relevance of this evidence as to liability.  However, prior drug use—including medical treatment resulting from drug use—and prior consistent alcohol use may be relevant to damages if it is supported by admissible evidence that is not remote or speculative.  *See Cobige v. City of Chicago, Ill.*, 651 F.3d 780, 785 (7th Cir. 2011).  In the motion in limine briefing, though, Defendants have not identified the evidence on these topics that they would seek to introduce.  *See* dkt. 285 at 8–9.  The Court therefore cannot fully evaluate the probative value or the risks of unfair prejudice and confusing the issues.  For these reasons and to ensure the

orderly presentation of evidence at trial, this motion is **GRANTED** at this stage to the extent that Defendants must first raise the evidence that they intend to elicit outside the hearing of the jury.

### d. Disputes with Ms. Todero

Ms. Todero argues that evidence of disputes between her and Mr. Todero would be "highly inflammatory" and therefore should be excluded under Federal Rule of Evidence 403.  Dkt. 271 at 38–39.  Officer Blackwell argues that the evidence is relevant because Ms. Todero is seeking damages for the loss of her relationship with Mr. Todero.  Dkt. 285 at 9.

As long as Ms. Todero seeks damages for her loss of relationship with Mr. Todero, evidence of the nature and quality of that relationship is relevant and highly probative.  *See* Ind. Code § 34-23-1-2 (allowing damages for "[l]oss of the adult person's love and companionship").  Indeed, Ms. Todero does not explain how a jury should be expected to evaluate these damages without hearing evidence of the nature of the relationship.  To the extent that some evidence may be inflammatory or prejudicial, that evidence still goes directly to the measure of Ms. Todero's damages.  *See* Fed. R. Evid. 401; *United States v. Hanna*, 630 F.3d 505, 511 (7th Cir. 2010) ("Because most relevant evidence is, by its very nature, prejudicial, we have emphasized that evidence must be *unfairly* prejudicial to require exclusion."); *Cobige*, 651 F.3d at 785 (Evidence of time in prison and drug addiction was relevant to damages and should not have been excluded under Rule 403.).  The relevance is therefore not substantially outweighed by the risk of unfair prejudice.  *See* Fed. R. Evid. 403.  This motion in limine is **DENIED**.

### 16.    Criminal history of Mr. Todero's family members

Ms. Todero seeks to exclude evidence of Mr. Todero's family members' "criminal convictions, arrests, and prior bad acts."  Dkt. 271 at 39–41.  She contends that Defendants failed to disclose prior convictions in response to interrogatory requests.  *Id.*  Defendants respond that impeachment evidence need not be disclosed before trial and that the Federal Rules of Evidence allow the use of prior convictions in certain circumstances.

The admissibility of witnesses' prior convictions is governed by Federal Rule of Evidence 609.  Ms. Todero cites no authority to support her contention that convictions must be disclosed in response to interrogatory requests before they can be admissible under that rule.  *See* dkt. 271 at 39–40.  The motion in limine is therefore **DENIED** to the extent that parties may impeach witnesses under Rule 609's provisions.

Ms. Todero also argues that prior bad act evidence should be excluded under Federal Rule of Evidence 404(b).  However, other than passing references to drug use and arrests, the parties have not identified the specific evidence at issue.  *See* dkt. 271 at 40–41; dkt. 284 at 17.  Because of the danger of unfair prejudice and misleading the jury, the motion is therefore **GRANTED**.  If any party intends to impeach or cross-examine Mr. Todero's family members with prior "misbehavior" other than a criminal conviction admissible under Rule 609, they must first raise the issue with the Court outside the presence of the jury.

14

### 17.     Theory that Mr. Todero was suicidal

Ms. Todero argues that speculation that Mr. Todero was suicidal should

be excluded.  Dkt. 271 at 41–42.  Officer Blackwell responds only that the

description of Mr. Todero as suicidal comes from two 911 callers and is

relevant to explain why Officer Blackwell was called to the scene and what he

had been told to expect there.  Dkt. 285 at 10.

Because the 911 calls have been designated as evidence and are relevant

to what Mr. Blackwell knew, the motion in limine is **DENIED** as to those calls

and any actions that Mr. Blackwell took that were affected by what he learned

from those calls.  *Abbott*, 705 F.3d at 724 (explaining that the totality of the

circumstances known to the officer is relevant in determining reasonableness).

The motion in limine is **GRANTED** as unopposed as to any speculation from

Ms. Todero and as to any argument that Mr. Todero did in fact commit suicide.

### 18.     Ms. Todero's statements about conflict between her and Mr. Todero

Ms. Todero argues that her prior statements about her relationship with

Mr. Todero should be excluded as unfairly prejudicial.  Dkt. 271 at 43–44.

Defendants respond that the evidence is directly relevant to her claim for

damages based on her relationship with Mr. Todero.  Dkt. 284 at 18; dkt. 285

at 10.

As explained above in the ruling on motion in limine number 15(d), as

long as Ms. Todero seeks damages for her loss of relationship with Mr. Todero,

evidence of the nature and quality of that relationship is relevant and highly

probative.  Again, Ms. Todero does not explain how a jury should be expected

to evaluate these damages without hearing evidence of the nature of the relationship.  To the extent that some evidence may be inflammatory or prejudicial, that evidence still goes directly to the measure of Ms. Todero's damages.  *See* Fed. R. Evid. 401.  The relevance is therefore not substantially outweighed by the risk of unfair prejudice.  *See* Fed. R. Evid. 403.  This motion in limine is **DENIED**.

### 19.   Statements from Mr. Todero's family about his cause of death

Ms. Todero argues that opinions from Mr. Todero's family members about his cause of death are inadmissible speculation.  Dkt. 271 at 44–46.  Officer Blackwell responds that evidence of their cause-of-death opinions is relevant to their credibility.  Dkt. 284–85.  No party, however, argues that any of Mr. Todero's family members observed the incident or have reliable, personal knowledge about Mr. Todero's cause of death.  *See* Fed. R. Evid. 701.  The motion in limine is therefore **GRANTED**.

### 20.   Dr. Vilke's opinion about undetected drug intoxication causing Excited Delirium Syndrome

The Court ruled on this issue in its September 30, 2021 *Daubert* order.  Dkt. 310.

### 21.   Dr. Vilke's opinions as a substitute witness for Dr. Vilke

The Court ruled on this issue in its September 30, 2021 *Daubert* order.  Dkt. 310.

### 22.   Officer Blackwell's admissions

Ms. Todero argues that she should be permitted "to use [Officer] Blackwell's admissions against Defendants at trial."  Dkt. 271 at 54–56.

Defendants do not argue that the admissions cannot be used.  Greenwood Defendants argue that Officer Blackwell's admissions do not bind them, and Officer Blackwell argues that he stands by the admissions, but should be allowed to explain them.

The parties **shall meet and confer** before trial on how the admissions are to be introduced and what instructions for the jury would be appropriate on how the admissions are to be used.  *See United Fire & Casualty Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 584 (7th Cir. 2021) (addressing Rule 36 admissions, including which parties they bind).

### 23.   Mr. Todero's activities prior to the incident

Ms. Todero argues that Defendants should be barred from using evidence about Mr. Todero's activities before the incident "in support of their defense of Plaintiff's constitutional and state law claims."  Dkt. 271 at 56–61.  Greenwood Defendants respond that the evidence is relevant and admissible not as information within the officers' knowledge, but to inform the expert testimony about Excited Delirium Syndrome.  Dkt. 284 at 28–33.

This motion in limine is **GRANTED in part**.  Greenwood Defendants have explained that several substantial portions of pre-incident activity are relevant to expert medical testimony that the Court has already held passes *Daubert* muster.  *See* dkt. 284 at 28–31.  That relevance is not substantially outweighed by the danger of unfair prejudice or confusing the issues, given the importance of laying a factual foundation for the jury to evaluate expert testimony.  *See* Fed. R. Evid. 403.  However, prior actions must be relevant to that purpose to be elicited.

17

Next, as explained above, prior actions that the officers did not know about may not be used as the basis for argument about the reasonableness of the actions.  *See Wallace v. Mulholland*, 957 F.2d 333, 336 (7th Cir. 1992) ("[T]he danger that a jury will conclude that a mentally deficient plaintiff, regardless of his actual behavior, somehow 'asked for' mistreatment at the hands of two policemen is greater than the value of such evidence to explain the police officers' use of force.  That general proposition seems especially correct where—as here—the police officers had no specific knowledge of [plaintiff's] condition before they tried to take him away.").  In short, the reasonableness of the officers' conduct must be evaluated in light of Mr. Todero's actions, rather than his condition.  *See id.*  While Officer Blackwell nevertheless argues that Mr. Todero's "activities prior to the time Defendants encountered him" are "extremely enlightening with respect to [Mr.] Todero's psychological condition," he does not explain why it is relevant specifically to the reasonableness of his actions.  Dkt. 285 at 11.

The motion in limine is therefore **GRANTED in part**.

### 24.   Actions of first responders or hospital doctors

Ms. Todero seeks to exclude evidence or argument that first responders or hospital doctors caused Mr. Todero's death, arguing that it would be speculative.  Dkt. 271 at 61–63.  The only evidence identified, however, is that a paramedic, Ian Godfrey, expressed concern that the Versed injection he gave Mr. Todero could have affected Mr. Todero's heart, and that Dr. Hartman agreed that it could have.  The motion is **GRANTED** as to that evidence

18

because, as explained above, Dr. Hartman may not offer expert medical opinions. The same reasoning applies to Mr. Godfrey.

### 25.   Ms. Todero's statements about this case's value

Ms. Todero seeks to exclude evidence of conversations and messages that she sent and received about the potential value of this case. Dkt. 271 at 63–64. Officer Blackwell responds that the evidence is admissible to show that this case is not simply about "Justice for Charlie." Dkt. 285 at 13. Any marginal probative value of evidence of Ms. Todero's motives and the motives of any witnesses is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. *See* Fed. R. Evid. 403. Therefore, this motion in limine is **GRANTED** and the Court further orders that no witnesses may testify to their subjective motivations in bringing or supporting this case.

### B. Greenwood Defendants' Motions in Limine

### 1.   Plaintiff's wrongful-death claim

Greenwood Defendants seek to exclude evidence and argument based on a wrongful-death claim, arguing that Ms. Todero lacks sufficient evidence to prove that Defendants' actions caused Mr. Todero's death. Dkt. 269 at 2–4. Ms. Todero responds that the proper procedure is instead to move for a directed verdict at trial, if Defendants believe that she lacks causation evidence. Dkt. 286 at 5–6.

The Indiana Supreme Court has explained that when "causation [is] the primary issue for the jury," both wrongful-death and survival actions may be pursued "to verdict." *Cahoon v. Cummings*, 734 N.E.2d 535, 543 (Ind. 2000).

Moreover, Greenwood Defendants have not identified any specific causation evidence that would not otherwise be admissible or any prejudice from the admission of any damages evidence that may be admissible only for a wrongful-death claim.  *See* dkt. 269 at 4.  The motion in limine is therefore **DENIED** at this stage.

### 2.     **Argument and evidence barred by *Daubert* rulings**

As explained at the final pretrial conference, the Court will not enter a redundant order requiring Ms. Todero to abide by a previous order.  The consequences of intentionally violating a court order provide ample incentive for self-regulation and compliance.  This motion in limine is **DENIED**.

### 3.     **Defendants' insurance and indemnification**

By agreement of the parties, the parties may not reference insurance coverage or indemnification.  *See* dkt. 269 at 7; dkt. 286 at 14.

### 4.     **Settlement negotiations**

By agreement of the parties, the parties may not reference settlement negotiations.  *See* dkt. 269 at 7; dkt. 286 at 14.

### 5.     **Hospital bills and medical expenses**

By agreement of the parties, the parties may not reference hospital bills and medical expenses from St. Francis hospital.  *See* dkt. 269 at 7–10; dkt. 286 at 14.

### 6.     **Officer Elliott's disciplinary history and resignation**

By agreement of the parties, the parties may not reference Officer Elliott's disciplinary history.  *See* dkt. 269 at 10–13; dkt. 286 at 15 (admitting that evidence of the incidents "likely should be excluded").  Similarly, the parties

20

may not reference Officer's Elliott's resignation and the related March 2018 incident. *See* dkt. 269 at 10–13; dkt. 286 at 16 ("Plaintiff again agrees that this would likely not be admissible.").  However, Ms. Todero argues that Officer Elliott may open the door to evidence that she failed to turn on her body camera in that incident, which would then be admissible to prove a lack of mistake in failing to turn on her body camera during the incident underlying this case.  Dkt. 286 at 16–17.  If Ms. Todero believes that the door has been opened at trial, she may raise this issue outside the hearing of the jury.

### 7.   Other uses of force from Greenwood Police Department officers, evidence of Taser training, and department policies

Greenwood Defendants seek to exclude evidence and argument that Officer Blackwell or other officers were inadequately trained, that the department's policies were deficient, or that the department over-relied on Tasers.  Dkt. 269 at 13–17.  They argue that this evidence is irrelevant because Ms. Todero's *Monell* claims have been dismissed.  Ms. Todero agrees that this evidence "likely should be excluded—unless Defendants open the door," with two exceptions.  First, Ms. Todero contends that Officer Blackwell's prior Taser uses are admissible.  Second, she contends that "evidence of what Greenwood's policies and training were regarding Taser use, use of force, and body camera usage, and evidence regarding Defendants' compliance or non-compliance with those policies—as opposed to evidence and argument about alleged *deficiencies* in those policies—is potentially relevant" and should not be barred.

For Officer Blackwell's four prior Taser uses, any probative value is substantially outweighed by the high risks of unfair prejudice, confusing the

issues, and misleading the jury.  Fed. R. Evid. 403; *see United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (Rule 403 "applies with full force" to Rule 404(b) evidence.).  There is ample evidence for the jury to consider regarding Officer Blackwell's use of the Taser on Mr. Todero, while evidence of other instances when he used a Taser carries "risk that the jury will draw the forbidden propensity inference." *Gomez*, 763 F.3d at 857; *see Houlihan v. City of Chicago*, 871 F.3d 540, 553 (7th Cir. 2017).

Moreover, the admission of evidence of past events would risk confusing the issues and creating a mini-trial on issues including whether the past events constituted excessive force and whether they are similar to the incident involving Mr. Todero.  *See Manuel v. City of Chicago*, 335 F.3d 592, 596–97 (7th Cir. 2003).  That balance is not changed by Todero's punitive-damages argument that the evidence is relevant to show a likelihood that Officer Blackwell "would repeat the conduct if an award of punitive damages is not made."  Dkt. 286 at 21.  The same mini-trials about the reasonableness of the prior Taser uses would still be required.  *See Manuel*, 335 F.3d at 596–97.  And, as explained below, other evidence about training and policies is admissible on that question.  Greenwood Defendants' motion is limine is therefore **GRANTED** on Officer Blackwell's prior Taser uses.

For evidence of the police department's training and policies, the parties appear to agree that evidence of training and policies is admissible, but argument that they were inadequate is not.  *See* dkt. 269 at 14 ("Blackwell's training may be relevant to the inquiry as to whether he should have deployed the taser the number of times he did on the date in question, but assertions

that Blackwell was inadequately trained and/or that the department's policies were deficient and thereby caused or contributed to the use of the taser are no longer at issue."); dkt. 286 at 18 ("[E]vidence of what Greenwood's policies and training were regarding Taser use, use of force, and body camera usage, and evidence regarding Defendant's compliance or non-compliance with those policies—as opposed to evidence and argument about *deficiencies* in those policies—is potentially relevant in evaluating Plaintiff's claims, and should not be barred in limine.").  Greenwood Defendants' motion is limine is **GRANTED in part** consistent with that understanding.

### 8. Damages testimony from Mr. Todero's family members other than Ms. Todero

Greenwood Defendants argue that Mr. Todero's family members, other than Ms. Todero, should be barred from testifying about their own grief and loss of love and companionship from Mr. Todero's death.  Dkt. 269 at 17–18.  Ms. Todero responds that while "family members other than Teresa Todero are not able to recover for their own loss of companionship," other family members' testimony is relevant to Mr. Todero's loss of life.  Dkt. 286 at 23–24.  This motion is **GRANTED** to the extent that family members other than Ms. Todero may not testify about their own grief and loss of love and companionship from Mr. Todero's death.

### 9. Value of Mr. Todero's life

Greenwood Defendants argue that the proper measures of damages for Mr. Todero's death is the loss of enjoyment of life, so Ms. Todero should not be allowed to argue about the priceless value of human life.  Dkt. 269 at 19–20.

23

Ms. Todero responds that both the value of life and the enjoyment of life "def[y] a precise economic calculation," and that their argument will not seek to improperly inflate a jury award.  Dkt. 286 at 26.

Greenwood Defendants have not cited authority drawing such a rigid distinction between the subjective value of life and the enjoyment of life, and the case law does not support one.  *See Glisson v. Correctional Med. Servs.*, 2018 WL 6807295 at *5 (S.D. Ind. 2018) (The "relevant question that the jury must resolve" under § 1983 is "how *enjoyment of life* is measured," not "how the overall value of a life is measured in the field of economics."); *Mercado v. Ahmed*, 974 F.2d 863, 871 (7th Cir. 1992) (applying Illinois law and explaining that studies about Americans' spending decisions do not "actually measure how much Americans value life").  As explained above, the evidence at trial will include testimony about Mr. Todero's life, and both parties may argue based on that evidence what the appropriate amount of damages, if any, should be.  This motion in limine is therefore **DENIED**.

### 10.   Officers' instant messages

Greenwood Defendants seek to exclude instant messages among officers, including Officer Blackwell, from shortly after the incident involving Mr. Todero.  Dkt. 269 at 20–23.  They argue that any probative value is substantially outweighed by the danger of unfair prejudice.  *Id.*  Ms. Todero responds that the messages are not unfairly prejudicial and that they are relevant to Officer Blackwell's state of mind and to punitive damages.  Dkt. 286 at 28–30.

These instant messages, sent the same day as the incident, are relevant to Officer Blackwell's state of mind when he deployed his Taser.  *See E.E.O.C. v. Ind. Bell. Tele. Co.*, 256 F.3d 516, 528 (7th Cir. 2001).  Indeed, all of the messages identified by the parties are in the context of messages to or from Officer Blackwell.  *See* dkt. 269 at 20–23; dkt. 286 at 26–30.[3]  And to the extent they may show callousness or inappropriate levity—questions for the jury to resolve—they are relevant to Ms. Todero's claim for punitive damages. *See id.*; *Woodward v. Correctional Med. Servs. Of Ill.*, 368 F.3d 917, 930 (7th Cir. 2004).  This motion in limine is therefore **DENIED**.

### 11.    Officer Elliott's remark at the hospital

Greenwood Defendants seek to exclude a remark from Officer Elliott that she made at the hospital after the incident, arguing that any probative value is substantially outweighed by the danger of unfair prejudice.  Dkt. 269 at 23. Ms. Todero responds that the remark is relevant to her mental state.  Dkt. 286 at 30–31.  For the reasons explained above about post-incident instant messages, this motion in limine is **DENIED**.

### 12.    Greenwood Police Department "cover up"

Greenwood Defendants argue that the police department's post-incident investigation is irrelevant and that any relevance is substantially outweighed by the danger of confusing the issues and misleading the jury.  Dkt. 269 at 23-27.  Ms. Todero responds by agreeing "that she will not present generalized

---

[3] Two of the messages are context for a message from Officer Blackwell but refer to a separate incident; Ms. Todero has no objection to excluding that context if Defendants prefer.  Dkt. 286 at 29 n.8.

arguments or evidence that the Greenwood PD conducted an inadequate investigation of the tasing or engaged in a coverup" and that she "does not intend to introduce evidence that Defendants failed to discipline Defendant Blackwell as part of a cover up."  Dkt. 286 at 32–35.  This motion is **GRANTED** consistent with that agreement.

The motion is otherwise **DENIED** at this pre-trial stage as to the specific evidence that Ms. Todero identified in her brief but Greenwood Defendants did not specifically move to exclude.  It is also **DENIED** at this stage as to evidence that the Greenwood Police Department officers may be "lying and covering up for each other."

### 13.   "Golden Rule" argument

By agreement of the parties, the parties may not make "Golden Rule" arguments.  *See* dkt. 269 at 27–28; dkt. 286 at 35.

### C. Officer Blackwell's Motions in Limine

### 1.   Joinder in Greenwood Defendants' motions in limine

The Court acknowledges Officer Blackwell's joinder in Greenwood Defendants' motions in limine.

### 2.   Other incidents involving Officer Blackwell

Officer Blackwell seeks to exclude evidence of incidents involving other alleged acts of police brutality, excessive force, false arrest, or illegal search and seizure.  Dkt. 270 at 1–2.  However, the parties have not identified any specific instances or the facts surrounding them, except for the prior Taser uses addressed in the Greenwood Defendants' motion in limine number seven. The Court therefore cannot fully evaluate the probative value or the risks of

unfair prejudice and confusing the issues.  For these reasons and to ensure the orderly presentation of evidence at trial, this motion is **GRANTED** at this stage to the extent that Ms. Todero must first raise the evidence that she intends to elicit outside the hearing of the jury.

### 3.      Citizens' complaints or internal discipline

Officer Blackwell seeks to exclude evidence of citizens complaints or internal discipline.  Dkt. 270 at 2.  In accordance with the rulings on Greenwood Defendants' motion in limine number seven and on Officer Blackwell's motion in limine number two, that motion is **GRANTED** at this stage to the extent that Ms. Todero must first raise the evidence that she intends to elicit outside the hearing of the jury.

### 4.      Settlement offers and negotiations

As explained above, by agreement of the parties, the parties may not reference settlement offers or negotiations.  *See* dkt. 269 at 7; dkt. 270 at 2; dkt. 286 at 14

### 5.      Insurance coverage

As explained above, by agreement of the parties, the parties may not reference insurance coverage or indemnification.  *See* dkt. 269 at 7; dkt. 270 at 2; dkt. 286 at 14.

### 6.      Information not provided in discovery

Officer Blackwell seeks to exclude "information that Plaintiff failed to provide" under the discovery rules but does not cite any evidence that would be excluded under this motion.  Dkt. 270 at 2.  This motion is therefore **DENIED** at this pre-trial stage.

### 7.    Post-incident messages

Officer Blackwell seeks to exclude his post-incident messages with other officers about the incident with Mr. Todero.  Dkt. 270 at 2–3.  In accordance with the ruling on Greenwood Defendants' motion in limine number ten, this motion is **DENIED**.

**IV.**
**Conclusion**

The parties' motions in limine are **GRANTED in part** and **DENIED in part** in accordance with this order.  Dkt. [268]; dkt. [270]; dkt. [271].  As with all orders in limine, this order is preliminary and "subject to change when the case unfolds."  *Luce v. United States*, 469 U.S. 38, 41 (1984).  No party shall reference or attempt to elicit evidence that has been provisionally excluded by this order without first seeking permission from the Court outside the presence of the jury.  Each party **SHALL ENSURE** its witnesses' compliance with this order.

Consistent with the Court's instructions at the final pretrial conference, counsel shall raise reasonably foreseeable evidentiary issues in advance outside the presence of the jury—generally before or after the trial day, over lunch, or at a break.  That includes situations when a party believes that the evidence at trial justifies a modification to this order.  To avoid wasting the jury's time, counsel must make every effort to avoid raising issues when they would require a sidebar or recess, which will be allowed only in extenuating circumstances.

**SO ORDERED.**

28

Date: 10/7/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

## APPENDIX A—TABLE OF MOTIONS AND RULINGS

|  | | |
|---|---|---|

| **Ms. Todero's Motions in Limine** | | |
|---|---|---|
| **#** | **Motion** | **Ruling** |
| 1 | Exclude undisclosed expert testimony from Dr. Hartman | Granted |
| 2 | Undisclosed witnesses | Granted as to all parties |
| 3 | Defendants' financial ability to pay a judgment | Granted by agreement |
| 4 | Ms. Todero's attorneys from Chicago | Granted |
| 5 | Defendants' positive employment history | Granted in part |
| 6 | Defendants' employment or criminal consequences | Granted by agreement |
| 7 | Jurors' pecuniary interests | Granted by agreement |
| 8 | Duplicative witness examinations | Denied |
| 9 | Former claims and defendants | Granted by agreement |
| 10 | Dr. Kroll's opinions on electrocution | Denied |
| 11 | Dr. Kroll's opinions on Taser safety generally | Denied |
| 12 | Mr. Todero's heart attack at sixteen | Granted |
| 13 | Mr. Todero's being under the influence of undetected drugs at the time of the incident | Granted |
| 14 | Cannabinoids in Mr. Todero's system at the time of the incident | Granted |
| 15 | Alleged prior bad acts<br>1. Limiting evidence to what the officers knew at the time of the incident<br>2. Arrests, charges, and other police contact<br>3. Substance abuse<br>4. Disputes with Ms. Todero | 1.	Granted<br><br>2.	Granted<br><br>3.	Granted<br>4.	Denied |
| 16 | Criminal history of Mr. Todero's family members | Denied as to Rule 609; otherwise granted |
| 17 | Theory that Mr. Todero was suicidal | Granted in part; denied in part |
| 18 | Ms. Todero's statements about conflict between her and Mr. Todero | Denied |
| 19 | Statements from the Todero family about Mr. Todero's cause of death | Granted |
| 20 | Dr. Vilke's opinion about drug intoxication causing Excited Delirium Syndrome | Resolved in *Daubert* order |
| 21 | Dr. Vilke's opinions as a substitute witness for Dr. Wetli | Resolved in *Daubert* order |
| 22 | Officer Blackwell's admissions | Resolved by agreement |
| 23 | Mr. Todero's activities prior to the incident | Granted in part; denied in part |

| Ms. Todero's Motions in Limine | | |
|---|---|---|
| **#** | **Motion** | **Ruling** |
| 24 | Actions of first responders and hospital doctors | Granted |
| 25 | Ms. Todero's statements about the case's value | Granted |

| Greenwood Defendants' Motions in Limine | | |
|---|---|---|
| **#** | **Motion** | **Ruling** |
| 1 | Wrongful death claim | Denied |
| 2 | Previous *Daubert* orders | Denied |
| 3 | Liability insurance or indemnification | Granted by agreement |
| 4 | Settlement negotiations | Granted by agreement |
| 5 | Medical bills/expenses | Granted by agreement |
| 6 | Elliott's disciplinary history & resignation | Granted by agreement |
| 7 | Prior uses of force; police department policies and Taser training | Granted in part |
| 8 | Damages testimony from Mr. Todero's family other than Ms. Todero | Granted in part |
| 9 | Value of life argument | Denied |
| 10 | Officers' instant messages | Denied |
| 11 | Elliott's remark at the hospital | Denied |
| 12 | Cover-up and failure to discipline | Granted in part; denied in part |
| 13 | Golden rule argument | Granted by agreement |

| Officer Blackwell's Motions in Limine | | |
|---|---|---|
| **#** | **Motion** | **Ruling** |
| 1 | Joinder in Greenwood Defendants' motions | |
| 2 | Other incidents involving Officer Blackwell | Granted |
| 3 | Citizens' complaints or internal discipline | Granted |
| 4 | Settlement evidence | Granted by agreement |
| 5 | Insurance coverage | Granted by agreement |
| 6 | Undisclosed evidence | Denied |
| 7 | Blackwell's post-incident instant messages | Denied |

Distribution:

Steven E. Art
LOEVY & LOEVY
steve@loevy.com

Scott R. Drury
LOEVY & LOEVY
drury@loevy.com

D. Samuel Heppell
LOEVY & LOEVY
sam@loevy.com

Mark A. Holloway
STEPHENSON MOROW & SEMLER
mholloway@stephlaw.com

Theresa Kleinhaus
LOEVY & LOEVY
tess@loevy.com

Jonathan I. Loevy
LOEVY & LOEVY
jon@loevy.com

Arthur Loevy
LOEVY & LOEVY
arthur@loevy.com

Caren L. Pollack
POLLACK LAW FIRM, P.C.
cpollack@pollacklawpc.com

Scott R. Rauscher
LOEVY & LOEVY
scott@loevy.com

Makeba Rutahindurwa
LOEVY & LOEVY
makeba@loevy.com

Pamela G. Schneeman
STEPHENSON MOROW & SEMLER
pschneeman@stephlaw.com

James S. Stephenson

STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Lana R. Swingler
POLLACK LAW FIRM PC
lswingler@pollacklawpc.com